**WATERS v. PHILLIPS et al. PHILLIPS et al. v. WHEELER et al. STER-
LING HYDRAULIC CO. et al. v. PHILLIPS et al.**

(Circuit Court of Appeals, Seventh Circuit. September 27, 1922.)

Nos. 3036, 2969.

1. **Eminent domain ⬅318—United States may use or lease water power developed
by dam, built pursuant to condemning right to flow lands.**

When the United States, after condemnation proceedings to acquire the
right to flow lands, in lawful exercise of its authority builds a dam
for purposes of navigation, the water power thus developed may be law-
fully used by it, or leased to any concern engaged in the development
and distribution of power or electrical current.

2. **Navigable waters ⬅29—United States may maintain dam at maximum height
for power purposes.**

Where the United States government acquires the right to erect a dam
to a certain height for the purpose of improving navigation, it also ac-
quires, as an incident thereto, the right to use the pond for power pur-
poses.

3. **Injunction ⬅23—Not proper remedy, where it would cause greater damage
than it would prevent.**

Injunction is not a proper remedy, when the damage caused by the thing
sought to be enjoined is relatively very slight compared with that which
would be caused by its issuance.

4. **Injunction ⬅23—Requiring lowering of dam used by power company as lessee
of government held not warranted by the facts.**

Where the United States at large expense built a dam in aid of naviga-
tion, and for 7 years maintained it at a certain height without objection
from owners of the land which was overflowed, and in the meantime a
power company had built a plant at large cost to use the water from the
pond made, such landowners *held* not entitled to an injunction which
requires lowering of the dam during certain months, which would stop
operation of the power plant, but will be held to their remedy at law,
especially in absence of showing that they would suffer substantial injury.

5. **Eminent domain ⬅318—Decrees held not to limit height of dam built by
United States.**

Condemnation decrees giving the United States the right to maintain a
dam in aid of navigation at a stated height, on which basis landowners
were compensated for flowage, *held* to entitle the government in its dis-
cretion to maintain the dam at such height during all times of the year.

Appeals from the District Court of the United States for the East-
ern Division of the Northern District of Illinois.

Suit in equity by Henry W. Phillips and others against Charles M.
Waters and against L. G. Wheeler and G. M. Hoffman, wherein the
Sterling Hydraulic Company and another sought to intervene and ap-
peal from a denial thereof. From a decree granting an injunction, de-
fendant Waters appeals. Reversed.

In Case No. 3036:

William D. Riter, Asst. Atty. Gen., for appellant.

I. L. Weaver, of Sterling, Ill., for appellees.

In Case No. 2969:

L. K. Neeves, of Chicago, Ill., for appellants.

I. L. Weaver, of Sterling, Ill., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

EVAN A. EVANS, Circuit Judge.   Appellees obtained an injunction restraining appellant, the officer and agent of the United States having charge and control of a certain dam, erected and maintained by the United States, in the Rock river, at or near Sterling, Ill., from maintaining a pool above said dam during the months of December, January, and February of each year, and directing him, the said officer, not later than the 1st day of each year, to lower the pool by raising each and every sluice gate or movable portion of the dam, and to permit the water to pass unrestricted.   Appellant was further permanently enjoined from permitting any use of the water of Rock river at the dam mentioned herein, for water power purposes, which "will in any way or manner require a pool during the months of December, January, and February."   The injunction was granted upon the unsupported bill of the plaintiffs, after the answer of the defendant denying many of the material allegations of the complaint had been stricken.

Examining the pleadings, we find that the United States, pursuant to Act Aug. 2, 1882 (22 Stat. 191, 207, 208), Act Aug. 11, 1888 (25 Stat. 400, 419, 420), and Act Sept. 19, 1890 (26 Stat. 426, 449), instituted three separate condemnation proceedings and acquired the right to flow certain lands in each proceeding; that the three appellees are respectively successors in title, in whole or in part to the owners of the three tracts of land thus separately condemned in such condemnation proceedings; that the interest of each plaintiff is in and to a separate piece of land; that they are not joint owners or tenants in common of any single tract of land; that the three condemnation proceedings are known as the Smith, the Galt, and the Duffie cases.   The suit against Galt was brought in March, 1898, the one against Duffie in November, 1898, and the one against Smith in 1899.   The judgments in the condemnation suits differ somewhat from the relief sought in the petition.

The dam was completed in 1907, and the War Department thereupon opened to traffic the canal connecting the Illinois river with the Mississippi.   This dam was built and maintained to a height of 206 feet above Hennepin datum.   Superimposed upon the crest are flash boards, which raise the level of the pond to 208.3 feet above Hennepin datum, but they were not placed upon the dam until August 1, 1914. About July 28, 1915, the War Department determined that a permanent level of 208.3 feet was essential to safe and convenient navigation, and to the use and operation of the canal and dam.   The dam was provided with sluiceways, some 18 in number, each 21 feet wide and 9 feet deep.

About August 1, 1914, the Sterling Hydraulic Company completed a plant for the generation of electrical power, which has been subsequently operated through its lessee, the Rock River Light & Power Company.   Congress, by Act March 2, 1907 (34 Stat. 1073, 1103), authorized the use of the head of water created by the dam for the purpose of furnishing electrical power to such plant.   A license from the War Department thereafter followed.   This suit was begun in 1917.

The three subjects of controversy are (a) the right of the United States to use its head of water for purpose of generating electrical

power; (b) the right of the United States to maintain a dam more than 206 feet above Hennepin datum; and (c) the right of the United States to maintain any pond during the winter months, December, January, and February.

Appellant, in addition to asserting the right of the United States to maintain the dam as constructed, and to use the head of water, not only for navigation purposes, but for any and all other lawful and useful purposes, (a) challenges the right of the complainants to bring this one joint suit to vindicate the individual and separate rights of each appellee; (b) insists that the United States government is the real party defendant and its application to intervene should have been granted; (c) that the suit cannot be maintained against the United States, and therefore should have been dismissed; (d) that in the condemnation judgments the right to construct a dam to the height of 208.3 feet above Hennepin datum was secured, and that no limitation upon its right to overflow the land at all times exists; (d) that the damages suffered by the complainant are inconsequential as compared to the great injury which the granting of the injunction will inflict; (e) that appellees, having permitted the expensive and extensive improvement to be constructed, without protest or objection, are estopped from asserting any adverse rights at the present time; and (f) that the issues of fact raised by the answer necessitated the hearing of oral testimony.

[1] Passing several of the assignments of error that impress us as meritorious, and coming to the merits of this controversy, we conclude that when the United States, in the lawful exercise of its authority, builds a dam for purposes of navigation, the water power thus developed may be lawfully used by the United States, or leased to any concern engaged in the development and distribution of power or electrical current. In other words, there was no need for the potential power residing in this pond to go to waste, and we can see nothing objectionable, but everything commendable, in the policy of the government in permitting a lessee or licensee to convert such power into electrical current. U. S. v. Chandler-Dunbar, 229 U. S. 73, 33 Sup. Ct. 667, 57 L. Ed. 1063.

[2] True, the right of the government cannot be exercised to the impairment of any right of the landowner. But such landowner's rights must be measured by the extent of the easement acquired by the sovereign in the condemnation proceedings. And where the United States government acquires the right to erect a dam to a certain height for the purpose of improving navigation, it also acquires, as an incident thereto, the right to use the pond for power purposes. In fact, it would be the unusual and rare exception to find a large and expensive dam constructed and a large pondage created, without an attending power plant to utilize the potential power of the passing water.

We therefore hold that, unless specifically and expressly limited, the right to erect a dam, create a pond, and overflow the adjoining land for the purpose of improving navigation carries with it the right to use the pond and the water power thereby developed for all useful purposes.

Was there any such express limitation upon the sovereign's right to so use the pond? If any such limitation existed, it is apparent it must be restricted to the winter months only, and read into the easement by implication and be traceable to documents other than the final decrees entered in the three condemnation proceedings.

[3] Before examining those decrees, however, it might be well to refer to another defense which appellant raised in the District Court and now presents in this court. He alleged in his answer that the land in which the various appellees are separately interested was not damaged by maintaining the dam to a height of 208.3 feet during the months of December, January, and February, and it is apparent that, if any damage resulted, it must be relatively very slight compared with that which the government would suffer as a result of the issuance of the injunction. This being the situation, it is claimed that injunction is not the proper remedy. With this position we fully agree. 1 High on Injunctions (4th Ed.) § 7; 14 R. C. L. 358; Cleveland v. Martin, 218 Ill. 73, 78, 75 N. E. 772, 3 L. R. A. (N. S.) 629; Becker v. Lebanon & M. Street Ry. Co., 188 Pa. 484, 41 Atl. 612; Beidenkopf v. Des Moines Life Insurance Co., 160 Iowa, 629, 142 N. W. 434.

[4] The dam was constructed at great expense. Appellees, or their predecessors in title, sat by and allowed this expense to be incurred. For some seven years thereafter the dam was maintained at a point higher than what appellees claim it should have been maintained, and without protest from them or others. During those years the sluiceways were never lowered during any of the winter months. The Sterling Hydraulic Company thereafter erected its plant for the generation of electrical power at great expense. Its purpose to use the water thus dammed up was obvious. Suit was not begun until 1917.

It would be unconscionable to now enjoin the maintenance of the dam, after it has thus been maintained since 1907, and interfere with the generation of electrical current, to permit plaintiffs to enjoy the use of the overflowed land during the winter months; and this would be particularly so in the absence of any showing that this use during the winter months was of any real or substantial value to appellees. If any appellee has a right that has been invaded, he has an adequate remedy at law. Crozier v. Krupp, 224 U. S. 290, 32 Sup. Ct. 488, 56 L. Ed. 771. Under the circumstances related above, he must be held to such remedy only.

[5] But, reverting to the limitation alleged to exist upon the government's easement, the record in the condemnation suits seemed to dispute appellees' claims. In the Galt case, the government acquired the right to flood the land permanently to a height of 208.3 feet. We find no qualification to, or limitation upon, this right. Mere reference to plans and specifications that may have been on file with the Secretary of War, and which evidenced the first intention of the government respecting the construction of the dam, cannot control over the right actually and expressly acquired thereafter by decree of court. As a matter of fact, the government in this suit condemned the right to flow the land to a level of 211 feet, and the fee owners were compensated on such basis. In the Smith case, the decree provided as follows:

"That is, the government by this judgment has the right to flow permanently to the height of 208.3 feet above Hennepin datum, and no higher flow, but shall not be responsible for temporary high water above that height."

There was a further provision, however, in the decree reading:

"And it is further ordered and adjudged that the said United States of America, in constructing the aforesaid dam in the petition herein described, build part or parts of it movable, in order that in winter and in times of flood these movable parts may be let down or removed, and the level in the pool thereby lowered."

Of course, in times of flood, the removal of flash boards is provided for the protection of the dam. May it not also have been for a similar purpose that the winter months provision was inserted? Again, what significance should be given to the word "may" as it appears in the decree? The provision that part of the dam be built of movable parts is not necessarily a provision limiting or restricting the government's right to maintain it at any height. It is for the government, with its absolute right to flow the land to the height of 208.3 feet, to determine the ultimate question of necessity, both as to the height and the period during which such height shall be preserved.

How much of the dam shall be built movable? The decree does not state. To what extent shall it be lowered in case of flood? Obviously, the answer calls for the exercise of judgment. Can navigation be successful, if all water in the pond be allowed to escape on December 1st? What was meant by the term "winter"? Obviously the answers to these pertinent questions necessitate a construction which leaves to the government, and not to the courts, the determination of height and permanency of the pond.

The dam was for the purpose of improving navigation through the creation and maintenance of a canal. If experience demonstrated that the dam should be maintained at 208.3 feet in the winter, in order to have the necessary pondage at other times of the year, we think this decree was sufficiently broad to convey that right. Certainly it must be obvious that weather conditions and rainfall would be material factors in determining this question. Experience by those in charge of the dam would make enlightened action by the War Department possible. In 1915 the War Department determined that it was necessary for the best use of the canal to have the dam maintained at a height of 208.3 feet. This finding is conclusive on the issue of necessity.

The Duffie case, while differing somewhat from the Galt case, does not make any provision for the construction of a dam with movable portions.

In No. 2969, the Sterling Hydraulic Company and the Rock River Light & Power Company sought permission to intervene as defendants, as the real parties in interest. Their petition should have been granted, but, in view of the disposition of the cause here, no direction need be made in reference to them.

The decree is reversed, with costs, with directions to dismiss the bill.