## FLEMING v. TIDEWATER OPTICAL CO., Inc.

District Court, E. Virginia, Norfolk Division.

Oct. 11, 1940.

Beverley R. Worrell, Regional Atty. of Wage and Hour Division, U. S. Dept. of Labor, James P. Hart, Jr., both of Richmond, Va., and George B. Searls, of Wage and Hour Division, U. S. Dept. of Labor, of Washington, D. C., for plaintiff.

James G. Martin, of Norfolk, Va., for defendant.

WAY, District Judge.

With regard to the contention that the Wage and Hour Act, Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., is unconstitutional, I will assume that act is constitutional until the Supreme Court has ruled to the contrary. I think a district court would be going far to hold the Act unconstitutional in the face of the numerous decisions that have been rendered in recent years with respect to what is interstate commerce. It is unfortunate that the Court has to rule on this contention at a time when a case presenting that question is pending in the Supreme Court and will very probably be decided in the next few weeks or months, but ruling upon the question now cannot be avoided unless the Court postpones decision of the instant case indefinitely.

I think, also, that the business in which defendant is engaged does not come within the purview of either of the exceptions in the Act upon which defendant relies; that is to say, in my opinion the defendant is engaged in manufacturing articles and a great percentage of the

articles so manufactured are sold and transported in interstate commerce. A great majority in quantity and value of the raw materials used by defendant in its manufacturing business are purchased and shipped to it in interstate commerce. It appears that approximately forty percent of its manufactured products are shipped out of Virginia. Furthermore, about one-third of its manufactured products are handled in Virginia by a subsidiary or companion Virginia corporation that has the same officers and is owned and controlled by the same interests that control defendant. Accordingly, it may fairly be said that the majority of the outside business of the company of manufacturing and selling articles is a part of the stream of interstate commerce. While I do not think we would necessarily be controlled by the number of customers in the state compared with the number outside Virginia, it is nevertheless a fact that defendant's customers outside of Virginia outnumber those within the state nearly two to one, or to be exact, 201 outside as against 102 in the state.

The evidence shows without conflict that the violations of the statute by defendant were extensive in three respects, namely: failure to pay minimum wages, failure to pay time and a half for overtime, and failure to keep proper records particularly with respect to alleged apprentices employed in defendant's manufacturing business. These violations may not have been quite as extensive as the report made by Mr. Lane indicates, but there is very little in the evidence that seriously contradicts his report with respect to violations. The evidence also shows the employment of an abnormal number of apprentices in proportion to the number of skilled laborers employed.

The violations in the respects to which I have just referred were numerous and continuous for a period of approximately sixteen months, without any break whatever from the time the Act became effective until the time Mr. Lane went to the defendant's plant in February 1940 to make the investigation.

In the early stages of the trial the Court was strongly impressed with the suggestion that this was a new act, that it is complicated, and that the violations were inadvertent and due more to ignorance of the provisions of the law than to in-

difference or intention. It was a new act and it contained many provisions which had not been construed and about the construction of which there could be serious differences of opinion. Situations of that character occur when Congress or the Legislature of a state, enacts drastic new legislation that has not had any predecessor statute or statutes; that is to say, where the provisions of the statute under consideration were not evolved through amendments and gradual changes in earlier statutes but the Act in its entirety is new. Those circumstances naturally made a strong impression on the Court but there are other facts shown in the evidence that cannot be ignored. Shortly before October 24, 1938, when this Act went into effect, two of defendant's competitors, one at least of whom certainly acted in good faith, called up defendant with reference to complying with the minimum wage provisions of the statute. These calls were made before the Act ever went into effect. Each of those witnesses has stated that he received no encouragement from defendant and their testimony is not seriously contradicted. Evidence of that character negatives the idea of ignorance of the provisions of the statute, and rather indicates indifference or even determination not to comply. That circumstance coupled with the extensive and continuous violations over a period of sixteen months, do not justify a decision that the violations were due to inadvertence or ignorance of the law, as contended.

In addition to those circumstances, the wages that are said to be due numerous employees by reason of the violations remain unpaid. I do not mean by that to say that the amounts determined by Mr. Lane are entirely correct or incorrect, but there is an absence of any proof showing any effort or desire on the part of defendant to make any fair adjustment of the amounts claimed, or to show that the amounts claimed are, in fact, not correct. The Court does not mean to say that all of the amounts shown to be due the employees are, in fact, due, but the evidence before it tends strongly to convince that a substantial part of the back wages is due, and there has been no effort, as far as the evidence discloses, on the part of defendant to make any adjustment one way or the other. The defendant did not, after it was advised of Mr. Lane's findings, take the initiative

to test the validity and applicability of the Act to its business.

 This Act of Congress was designed to protect the laboring public generally against the practices which it outlaws, and notwithstanding the failure to prove any specific serious violations of the Act since the investigation made by Mr. Lane and the strong professions of intention to observe its provisions in the future, the Court is of the opinion under all the circumstances disclosed that it ought to grant an injunction against future violations.

Injunctions have been granted in cases where after action was instituted the defendant not only desisted from further violations but went out of business. For example, the decision cited from the District Court of Maryland. In that case, after suit was instituted by the Securities Exchange Commission, the defendant ceased violations and went out of business. Nevertheless the injunction was granted. Other similar cases could be cited. I am not prepared to say that there is any great difference in principle between a case of this kind where great public interest is involved, and the defendant is continuing in the same business, but ceased violations before the Government had time to institute proceedings in normal course, and a case where the defendant continued the violations until suit was instituted and thereafter discontinued them and went out of business. The Court takes notice of the fact that the Government through its different bureaus and agencies necessarily moves slowly. Frequently there is a great deal of unavoidable delay in instituting a suit of this nature. There can be no doubt that if this suit had been instituted in January or February, or at any time before Mr. Lane made the investigation and the violations were established, that the Court would have granted an injunction upon a proper application. Simply because the Government has been of necessity slow in instituting suit and bringing the case to trial is, in my opinion, not a sufficient reason in a case like the present for refusing to grant an injunction. This type of case is distinguishable from cases that involve threatened injuries to private rights only.

The Court, therefore, concludes that under all the circumstances, considering the continuous and numerous violations that extended over a period of approximately sixteen months, with knowledge on the part of defendant of the general provisions of the Act, and the failure to make any effort to determine the correct amounts due employees for back wages, that it ought not to refuse an injunction and dismiss the bill. If the defendant in good faith hereafter complies with the Act, the injunction need not affect it; if it violates the provisions of the Act, the Administrator will not have to institute a new suit in order to obtain appropriate relief.