**FLEMING, Administrator of Wage and Hour Division, United States Department of Labor, v. PHIPPS.**

No. 719.

District Court, D. Maryland.

Nov. 9, 1940.

Bernard S. Needle, of Baltimore, Md., for plaintiff.

Miles & O'Brien and Seymour O'Brien, all of Baltimore, Md., for defendant.

CHESNUT, District Judge.

In the above case the plaintiff has moved for a summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The complaint is filed by the Administrator of the Wage and Hour Division of the United States Department of Labor against George Phipps, a citizen of the State of Maryland and resident of the lower Eastern Shore of the State near the Virginia State line. The only relief prayed in the complaint is a preliminary and permanent injunction against violation of sections 15(a) (1), 15(a) (2), and 15(a) (5) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201 et seq., 215(a) (1, 2, 5).

The complaint alleges that from October 24, 1938, to October 23, 1939, the defendant, in operating a small sawmill in Virginia, paid less than 25 cents an hour to his employes, and thereafter until the filing of the complaint on June 14, 1940, paid less than 30 cents an hour to his employes; and during all said period engaged in interstate commerce. It is also alleged that during the whole of said period the defendant failed to keep records of the persons employed by him and of their wages, hours and other conditions of employment, in accordance with regulations prescribed by the Administrator. The defendant's answer admits his failure to pay minimum wages and keep records as alleged; but the answer alleges that the violations of the Act and Regulations by the defendant up to December 5, 1939, were unintentional and not wilful on his part in that he did not then clearly understand that his business was subject to the operations of the Fair Labor Standards Act; and that when an agent of the Administrator visited him on December 5, 1939, and informed him that he must comply with the Act, the defendant at once ceased all business operations for a period of about ten days, and after resuming business has continuously thereafter fully complied with the Act both as to the rate of wages paid and the keeping of records as required by the Regulations; and that he has no intention to fail to comply with the Act in any respect in the future.

In accordance with the procedure outlined in Rule 56 the Administrator, in support of his motion for a summary judgment, has filed the affidavit of Raymond W. King, an inspector for the Administrator, who visited the defendant about December 5, 1939, which, in substance, supports the above averments of the complaint; and the defendant has also filed an affidavit in general support of his answer. At the hearing on the motion for summary judgment both affiants were in court and supplemented their affidavits by oral testimony. The facts thus developed may be briefly stated.

The defendant, George Phipps, has been engaged for about 35 years in saw-mill operations on the Eastern Shore of Maryland and Virginia. He owns a small portable saw-mill and from time to time has about 17 employes. During the year 1939 and a portion of 1940, he was operating his business under a contract with the Long Lumber Company engaged in the lumber business with plant near Salisbury, Wicomico County, Maryland, which is a few miles from the Virginia State line. This contract provided in substance that Phipps would produce lumber from timber in Accomac County, Virginia, belonging to or acquired by the Long Lumber Company, and after producing the lumber, deliver it to the Long Company in Maryland, Phipps to be paid for his saw-mill labor in converting the timber into lumber at the rate of $8.50 per thousand feet board measure. Phipps is one of about 25 small saw-mill operators engaged in similar business on the lower Eastern Shore of Maryland and Virginia. For many years past and until recently the current rate of wages paid for labor in such saw-mill operations has been from time to time only 20 to 25 cents per hour. When King, the investigator for the Administrator, visited Phipps about December 5, 1939, the latter freely and frankly informed him of his business methods and activities and the rate of wages paid his employes and failure to keep bookkeeping records (which he had never theretofore kept in his business operations); and when King informed Phipps that he was subject to the Act and

would have to comply therewith, Phipps replied that it was financially impossible for him to pay his employes 30 cents an hour, in view of the contract price which he was receiving for his work from the Long Lumber Company; and therefore he would have to discontinue operations; and he did so discontinue for a period of ten days, at which time he resumed them after making a new contract with the Long Lumber Company at first for $10 and later $11 a thousand feet board measure; and that since he resumed operations in December, 1939, he has continuously thereafter fully complied with the Act both in the rate of wages paid his employes and the records kept. A subsequent investigation made by Mr. King in June, 1940, showed from the defendant's records and statements, that he had been fully complying with the Act since December, 1939. It further appeared from the testimony of Mr. King that some time during 1940 Phipps abandoned further active participation personally in the Virginia work, which was left to the management of his son, and started a smaller saw-mill operation in Maryland doing some work for the Wells Lumber Company at Salisbury. An investigation of the defendant's records in the latter work made by King showed a possible insufficiently detailed compliance with the Regulations as to records with respect to the time of two truck drivers employed by the defendant on the basis of a flat charge for a round-trip of the truck from the saw-mill to Salisbury; but the evidence did not sufficiently show that the Maryland operation was interstate commerce.

The complaint alleged in paragraph 10 that the "defendant has, since the effective date thereof, continuously violated the aforesaid provisions of the Act, and threatens and intends to continue to violate the said provisions unless enjoined and restrained by a judgment of this court."

This averment of the complaint is denied by the answer and is not supported by the affidavit of Mr. King and is expressly denied by the affidavit of the defendant and the oral testimony. I find as a fact that the defendant in good faith ceased to violate the Act on December 5, 1939, and in good faith thereafter has fully conformed to the requirements of the Act; and there is nothing submitted to indicate the probability of any future non-compliance by the defendant. It also appears that the defendant is a very small operator, and without capital for the prosecution of his business with the exception of one or two small portable saw-mills and two or three trucks for the transportation of lumber for a few miles from the mill to the lumber yard. In the Virginia operation the defendant did not own the timber but merely fabricated it into lumber for the owner and delivered it a few miles from Virginia across the Maryland line. The latter activity is that which supplies the required element of interstate commerce which made the defendant subject to the Act. The defendant stated his net profits over a period of years in the past, after a very modest living expense, averaged possibly $500 a year.

The only judgment prayed for in the complaint is an injunction against future violation of the Act by the defendant. The clearly established facts pertinent thereto are (1) from October 24, 1938, to December 5, 1939, the defendant clearly violated the Act in respect to the minimum amount of wages paid his employes and the failure to keep records of their employment; (2) that the defendant in good faith ceased to violate the Act on December 5 or 6, 1939, and has continuously thereafter fully complied with the Act; (3) that the complaint in this case was not filed until June 14, 1940; (4) and there is conflict or uncertainty on the affidavits as to whether the defendants admitted violations of the Act prior to December 6, 1939, were wilful or due to ignorance or uncertainty about the application of the Act. King's affidavit indicates from his reported conversation with Phipps that his failure was wilful, but this is in effect denied by Phipps. If we look to the latter's actions it appears that his failure was due to financial inability rather than wilful disregard of the Act. His technical legal status was that of an independent contractor but his economic situation was substantially that of an employe. This, however, is of itself not very important because the defendant either knew or should have known that his Virginia operations with delivery of his completed work from Virginia into Maryland subjected him to the Act.

After considering the oral arguments of counsel and brief submitted by counsel for the Administrator, I reach the conclusion of law that the motion for summary judgment, and the consequent issuance of an injunction, should not be

630

granted. While the testimony submitted at the hearing on the motion seemed to cover the whole case on the merits, counsel for the Administrator has submitted the matter only on the motion for summary judgment. Such a motion should be granted only where all the facts entitling the movant to the judgment requested are admitted or clearly established. Here previous violations of the Act are clearly established and indeed admitted, but the averment of the complaint that the violations of the Act have continued up to the time of the filing of the bill and will continue thereafter until enjoined, is not only not proven, but is successfully contradicted. The case therefore seems to be clearly not one in which a summary judgment can properly be entered for the complainant, unless the defendant's abandonment of violations long before the filing of the complaint can be disregarded as immaterial. Counsel for the Administrator urges that this fact is not controlling and also that the injunction should be issued for the following reasons: (1) That the failure to issue the injunction in view of the admitted violation of the Act in the past by the defendant would impliedly be a vindication of the defendant and an encouragement to others engaged in similar business activities to violate the Act; (2) because the Administrator has a limited appropriation for the enforcement of the Act and is unable to effectively "police" the industry in which the defendant is engaged, and therefore wishes an injunction against further violation of the Act by the defendant in order that if such violations occur the defendant can be summarily disciplined on contempt charges without a jury trial; (3) that an injunction would be of assistance to the Administrator in possible future proceedings against the Long Lumber Company for alleged violation of the Act in the shipment in interstate commerce of lumber produced in violation of the terms of the Act. The defendant resists the issuance of an injunction on the ground that as he ceased to violate the Act for more than six months prior to the filing of the complaint and has continuously in good faith observed the Act since then, and has no intention to further violate the Act, the issuance of the injunction is entirely unnecessary.

 There is no question raised in this case as to the constitutionality or valid-

ity of the Act. Numerous injunctions have been issued by this court to restrain violations of the Act where the government's right to relief was established without contest from the defendants. Section 17 of the Act empowers the district courts of the United States "for cause shown" and after due notice, to restrain violations of Section 15 of the Act, which includes violations admitted by the defendant. The only question in this case is whether the facts show proper cause for the injunction. The special reasons urged by counsel for the Administrator for the injunction in this case seem to be for indirect and collateral objectives rather than in accordance with the usual equity rules relating to injunctions. It would seem to be elementary that the purpose of an injunction is to deter rather than to punish. Section 16(a) of the Act provides an adequate scope of punishment by the ordinary criminal procedure. Of course the provisions for injunction and for criminal prosecution are alternative remedies, but the injunction should not be granted unless there is adequate cause shown therefor in accordance with applicable principles of equity.

 It is a familiar rule of equity that an injunction will not be issued where the wrong complained of has fully and definitely terminated before the institution of the suit; and where the circumstances are such that the chancellor is convinced from the proof there is no likelihood of repetition. United States v. United States Steel Corp., 251 U.S. 417, 445, 40 S.Ct. 293, 64 L.Ed. 343, 8 A.L.R. 1121; Securities & Exchange Comm. v. Torr, 2 Cir., 87 F.2d 446, 450; Shore v. United States, 7 Cir., 282 F. 857; Blease v. Safety Transit Co., 4 Cir., 50 F.2d 852, 856; Brookings State Bank v. Federal Reserve Bank, D. C., 281 F. 222. The applicable law was discussed at some length in the opinion of this court in Securities and Exchange Comm. v. Lawson, D.C., 24 F.Supp. 360, 361, 364. In that case an injunction was issued to restrain further violations of the Securities Exchange Act of 1934, 15 U.S. C.A. § 78a et seq., but the facts were very different from those involved in this case, particularly in that the violations had continued up to the time of the institution of the suit. In this case the violations had ceased more than six months before the institution of the suit, and although defendant's answer was filed July 5, 1940, the

motion for summary judgment was not filed until October 16, 1940, about three months after King, the inspector, had visited the defendant and found that he had complied with the Act since December 5, 1939.

The legal position of counsel for the Administrator seems to be that the court should automatically issue an injunction in these cases whenever it is found that the defendant has previously violated the Act, irrespective of whether the violations have ceased a considerable time prior to the institution of the suit, and irrespective of whether the circumstances indicate the probability of future violations. I do not find in the Act any indication that it was the intention of Congress that the injunctive powers of the court should be so extensively used in the enforcement of the Act. On the contrary, the statutory requirement that the injunction should be issued only "for cause shown", and the reference to 28 U.S.C.A., § 381, with respect to adequate notice, seem to indicate that the usual equity rules applicable to injunctions are to be regarded, with the exception that it is not necessary for the complainant to show irreparable injury in this class of cases where the injunction is asked to prevent violations of an Act establishing an important public policy. Securities & Exchange Comm. v. Torr, supra; Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 571, 50 S.Ct. 427, 74 L.Ed. 1034. A number of recent statutes of Congress have expressed its public policy in restricting rather than expanding the use of injunction by the federal courts, as in the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., and see, also, 28 U.S.C.A., § 381 and 29 U.S.C.A. § 52.

The cases cited by counsel for the Administrator do not seem to me to support his position in this case. Those dealing with at all comparable situations are clearly distinguishable on the facts, as for instance Securities and Exchange Comm. v. Torr, D.C., 22 F.Supp. 602; Securities & Exchange Comm. v. Otis & Co., D.C., 18 F.Supp. 100, affirmed, 6 Cir., 106 F.2d 579. I have carefully considered the oral opinion of Judge Way in the Eastern District of Virginia in a case under this Act. Fleming, Administrator v. Tidewater Optical Co.[1] With much that was there so well expressed I am in accord but, although the full facts of the case are not before me, the oral opinion indicates that the facts there differed materially from those presented in this case.

The motion for a summary judgment is therefore denied.

---

[1] No opinion for publication.