## WALLING v. BUILDERS' VENEER & WOODWORK CO.

### Civ. A. No. 382.

District Court, E. D. Wisconsin.

June 30, 1942.

Gerard D. Reilly, and Irving J. Levy, both of Washington, D. C., and Alex Elson, and Lee K. Beznor, both of Chicago, Ill., for plaintiff.

Robert C. Bassett (of Minahan & Bassett), of Green Bay, Wis., for defendant.

DUFFY, District Judge.

This is an action to enjoin the defendant company from violating the provisions of Sec. 15(a) (1), (2), and (5) of the Fair Labor Standards Act of 1938 (Act of June 25, 1938, c. 676, 52 Stat. 1060 et seq., 29 U. S.C.A. § 201 et seq.

The complaint alleges that the defendant is, and was at all times mentioned in the complaint, engaged in the production, sale, and distribution of cheese boxes and lumber, employing approximately twenty employees in and about its manufacturing plant near Rio Creek, Wisconsin. The violations alleged are (1) payment of wages at rates less than those prescribed in Sec. 6(a) (1) and (2); (2) employment of certain employees for work-weeks longer than those

prescribed in Secs. 7(a) (1) and (2) without payment of overtime; (3) the sale and delivery in interstate commerce of goods produced in violation of the terms of the act; and (4) failure to keep adequate records. Continuous violations and threat to continue same were also alleged.

The defendant denied the affirmative allegations of the complaint and specifically denied (1) that the court had jurisdiction over the matter; (2) that the Administrator had authority to bring the action; (3) that the Administrator had jurisdiction over the affairs of the defendant; (4) that the act could constitutionally be applied to the defendant because of the nature of its business and because neither the defendant nor any of its employees have been at any time engaged in interstate commerce or in the production of goods for interstate commerce or in any operation of any kind which might be classified as interstate commerce within the terms of the act or the United States Constitution; and (5) that, even if the defendant may be found to be engaged in commerce or in the production of goods for commerce, the Administrator had authority to apply the provisions of Secs. 6 and 7 of the act as to those of defendant's employees who are within the exceptions provided by Sec. 13(a) (1) and (2) and (b) of the act. The answer further alleged that because of the provisions of Secs. 15(a) (1), (2), and (5), and 16(a) and (b), the granting of the order prayed for would violate the rights of the defendant as guaranteed by the Fifth Amendment. Finally, it is alleged that the court is without jurisdiction because the case is moot, since the defendant has paid to all of its employees the amount of back wages which would have been due them had they been subject to the provisions of the act since its effective date, and has furthermore readjusted its operations to meet each and every standard required by the act. If, however, the answer states, the defendant should be found to be within the jurisdictional provisions of the act, then it, by its full compliance with the provisions of the act and its action in making full restitution for any violation of the terms thereof prior to its readjustment, has placed itself in a position of full compliance with the terms of the act, and has thus made the cause moot. Such action on the part of the defendant, it is alleged, having been accomplished with the cooperation, consent, and partially under the direction of the plaintiff, constitutes a settlement in the nature of an accord and satisfaction, sufficient to bar the raising of such matters by the plaintiff at this time.

Almost at the conclusion of the trial the defendant moved to amend its answer by striking therefrom all provisions denying that the Fair Labor Standards Act covered the operations of the defendant, or that its employees are engaged in production of goods for commerce. Over the objection of the government, the court permitted the amendment.

The single question presented for determination is whether the plaintiff is entitled to the issuance of an injunction, as provided in Sec. 17 of the act.

The defendant contends that no injunction should be issued because all violations of the act ceased prior to the institution of the action and for the further reason that from the time of defendant's amendment made near the end of the trial, it has not contested the validity or applicability of the act.

■ The broad doctrine of the right of the government, as parens patriae, to protect the interests of the public from injury through the use of the injunctive remedy has been uniformly sustained. United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820.

■ It is now well established that where agencies of the federal government have been given the right to apply for injunctive relief in the public interest, the courts do not require a showing of irreparable injury as might be the case where injunctive relief is sought at the instance of a private individual. Securities and Exchange Comm. v. Torr, 2 Cir., 87 F.2d 446; American Fruit Growers, Inc., v. United States, 9 Cir., 105 F.2d 722; Interstate Commerce Commission v. Consolidated Freightways, Inc., D.C.N.D., 41 F.Supp. 651. The same principle applies as to the issuance of an injunction under Sec. 17 of the Fair Labor Standards Act. Fleming v. Salem Box Co., D.C.Or., 38 F.Supp. 997; Fleming v. Phipps, D.C.Md., 35 F.Supp. 627; Fleming v. National Bank of Commerce, D. C.W.Va., 41 F.Supp. 833. In a case involving injunctive relief under the Securities and Exchange Acts of 1933 and 1934 (Securities and Exchange v. Lawson, D.C. Md., 24 F.Supp. 360, 365), the court said: "* * * Not only the language of the statute but the fundamental purposes of the

Acts can only be gratified by a definite decree of the court which adjudicates the illegality of the practice in the past and enjoins the defendant from repetition thereof in the future. Injunction in such matters is evidently an important feature of the legislation for the protection of the public in the future. * * *"

■ In determining whether there is "cause shown" in this case for the issuance of an injunction, the following principles may be extracted from the authorities:

(1) The purpose of the injunction is not to punish the guilty party for past violations, but to insure his future compliance with the law. J. C. McFarland Co. v. O'Brien, D.C.Ohio, 6 F.2d 1016; Fleming v. Phipps, D.C.Md., 35 F.Supp. 627; Fleming v. National Bank of Commerce, D.C. W.Va., 41 F.Supp. 833.

■ (2) The abandonment of the practices found to be unlawful will not, per se, bar the issuance of the injunction. United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007; Vick Medicine Co. v. Vick Chemical Co., 5 Cir., 11 F.2d 33; Securities and Exchange Commission v. Lawson, D.C.Md., 24 F.Supp. 360; Otis & Co. v. Securities and Exchange Commission, 6 Cir., 106 F.2d 579. Cf. Federal Trade Commission v. Goodyear Tire & Rubber Co., 304 U.S. 257, 58 S.Ct. 863, 82 L.Ed. 1326, holding that the discontinuance of a practice found by the Commission to constitute a violation of the act there involved did not render the controversy moot.

■ (3) However, an injunction will not be issued to prevent practices which have been discontinued and are not likely to recur. Equity courts will not do a useless thing. Securities and Exchange Commission v. Universal Service Ass'n., 7 Cir., 106 F.2d 232, certiorari denied 308 U.S. 622, 60 S.Ct. 378, 84 L.Ed. 519; Fleming v. Phipps, D.C.Md., 35 F.Supp. 627; Hughes Tool Co. v. Owen, D.C.Tex., 39 F.Supp. 656.

■ (4) The equities of the case must be in favor of the party seeking the injunctive relief. Fleming v. National Bank of Commerce, D.C.W.Va., 41 F.Supp. 833; Fleming v. Phipps, D.C.Md., 35 F.Supp. 627; United States v. Appalachian Electric Power Co., D.C.Va., 23 F.Supp. 83, affirmed, 4 Cir., 107 F.2d 769, reversed on other grounds 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243; Waters v. Phillips, 7 Cir., 284 F. 237.

■ (5) The final test in every case will be the existence and manifestation of good faith by the defendant. The issuance of the injunction will depend upon whether the defendant's conduct in the past indicates a reasonable likelihood of further violations of the law in the future. Securities and Exchange Commission v. Universal Service Ass'n, 7 Cir., 106 F.2d 232; Shore v. United States, 7 Cir., 282 F. 857; Fleming v. Tidewater Optical Co., Inc., D.C.Va., 35 F.Supp. 1015; Securities and Exchange Commission v. Torr, 2 Cir., 87 F.2d 446; Fleming v. Phipps, D.C., 35 F.Supp. 627; and Snyder v. Gurnsey, D.C.N.H., 43 F.Supp. 204.

The defendant has been engaged in the production of cheese boxes since 1910. On October 24, 1938, the effective date of the Fair Labor Standards Act, defendant employed about twenty men in its plant near Rio Creek, who were subject to its provisions. It is undisputed, however, that the defendant did not comply with the wage and hour provisions of the law, as to these employees, until October 15, 1940.

After the law went into effect, officers of the defendant communicated with the Wage and Hour Division of the Department of Labor upon several occasions. Interpretive Bulletins, issued by the administrator, were sent to the company. The defendant received advices to the effect that its employees came within the coverage of the act. Nevertheless, it appears that the defendant, instead of attempting to comply with the provisions of the law, inaugurated a wage cut sometime in January, 1940.

Evidence introduced by the defendant tended to show that after the effective date of the act, efforts were made by Mr. Jarabek and other officers to determine from sources other than the Department of Labor whether or not the act applied. The Wisconsin Lumber Dealers' Association advised defendant's officers that the act did not apply to its employees. An attorney employed by the defendant gave it the same advice. Other evidence submitted on behalf of the defendant was to the effect that an agent of the Wage and Hour Division, Berger, also advised the defendant that its employees did not come within the provisions of the act. This, however, was denied by witnesses for the plaintiff.

Four separate shipments of cheese boxes were made to Freeport, Illinois, during the months of July and August, 1939. The total purchase price received by the defendant for these shipments was $1,755.03. Jarabek

testified that he was told by Berger that if such shipments were discontinued, the defendant would not come within the purview of the act. Accordingly, all out of State shipments were stopped.

Sometime during the spring of 1940, defendant's plant, along with those of other Wisconsin mill companies, was investigated by agents of the Wage and Hour Division. The conclusion that the act applied was reached, and the Division made computations of back wages due employees of the defendant, beginning with the effective date of the act, and demanded payment of such amounts. Finally, on October 15, 1940, payment amounting to $1,642.75 was made.

For reasons best known to it, the defendant took the position that the Fair Labor Standards Act was not applicable to it. This position it maintained down to the last day of the trial, as is perhaps best expressed by Mr. Jarabek's statement, made just before the close of the evidence: "I still say we don't come under the act."

During the trial, several inconsistencies appeared in the testimony of the most important witnesses for the defendant. An example of this is indicated in Mr. Jarabek's explanation for the reason for the 10% pay cut effected in January, 1940. Another example can be found in the testimony of Mr. Prokupek, bookkeeper and office manager of the defendant. Mr. Prokupek testified that in the case of a certain employee, one Thalis Laurent, one payment of $3.85 was made for certain work done, and that a 4¢ deduction for social security had been made. When asked how it would be possible for the employee, who was on piece work, to earn the odd amount of $3.89, the witness corrected himself and admitted that no social security deduction had in fact been made.

■ Defendant vigorously contends that no injunction should be issued because it ceased all violations of the act prior to the institution of the suit and because the evidence shows that the defendant is sincere in its promise that it will not violate any of the provisions of the act in the future. Essentially, the decision of this court must turn upon whether the record discloses a sufficient basis for a reasonable conviction

that the defendant is sincere in its promises. This court, as it has been pointed out, is not rigidly bound, in the exercise of its discretion, by the factual sequence of events as portrayed by the record: the discontinuance of the prohibited acts on or before October 15, 1940, and the admission of the validity and applicability of the act, in themselves, are mere criteria by which the fundamental issue of good faith may in part be determined.

■ In the instant case, the conduct of the defendant has been such as to give the court little assurance of its good faith. The original answer filed vigorously attacked the jurisdiction of the court upon every possible ground. Throughout the trial the same attitude persisted. Some of the witnesses for the defendant failed to display that candor which is to be expected on the part of a litigant who is motivated solely by the desire to see complete justice prevail.

Upon every issue, the defendant put the government to its proof; it only evidenced a desire to amend its answer to admit the validity and applicability of the act when it was readily apparent that no useful purpose would be gained by further refusal to do so. So full and elaborate a contest of a case of this nature is not in harmony with the many promises of good faith made by the defendant and its counsel. It is equally true that it is inconsonant for this defendant, on the one hand, to protest so earnestly its desire to comply with the provisions of the act in the future, and, on the other hand, to contest so vehemently the granting of an injunction which can have no effect unless some provision of the act is in fact violated in the future. As was said in the case of Fleming v. Tidewater Optical Co., D.C.Va., 35 F. Supp. 1015, 1017: "If the defendant in good faith hereafter complies with the Act, the injunction need not affect it; if it violates the provisions of the Act, the Administrator will not have to institute a new suit in order to obtain appropriate relief." The balancing of the equities of the case appear to be clearly on the side of the plaintiff.

I am of the opinion that the course of conduct pursued by the defendant constitutes "cause shown" for the issuance of an injunction under Sec. 17 of the act.