## WALLING v. SHENANDOAH-DIVES MINING CO.

### No. 2623.

Circuit Court of Appeals, Tenth Circuit.
March 8, 1943.

Peter Seitz, of Washington, D. C. (Irving J. Levy and Bessie Margolin, both of Washington, D. C., Kenneth P. Montgomery, of Kansas City, Mo., and Flora G. Chudson, of Washington, D. C., on the brief), for appellant.

Frazer Arnold, of Denver, Colo. (Charles Kentor and Arnold Weinberger, both of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This action was instituted in the United States District Court for the District of Colorado by the administrator of the Wage and Hour Division of the United States Department of Labor to enjoin the Shenandoah-Dives Mining Company from violating provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The complaint alleged violations of the Act extending over a period of three years. In a supplemental answer, the company alleged that about six months after the institution of the action it entered into a new contract with the bargaining representatives of its employees, which superseded the contract of which the administrator complained. It alleged that the new contract fully complied with the Act, and that, therefore, the controversy had become moot.

At a pretrial conference, counsel for the company, while contending that the original contract was in compliance, further stated that the new contract was in full compliance with the Act; that it was entered into in good faith and was intended to be a permanent arrangement with no thought or desire either to change the wage scale or go back to the former scale or plan set up in the challenged contract.

Counsel for the administrator admitted that the new contract was in full compliance and stated that they did not dispute or challenge the statement of counsel for the company that it intended in good faith to comply with the Act. It must therefore be assumed that at the time of trial the company was in full compliance in good faith with the provisions of the Act.

The trial court found that the new contract fully complied with the Act; that it was entered into without any purpose of subterfuge; that the administrator made no objections to the new contract; and that the controversy had become moot.

The question presented is whether, under these circumstances, the administrator is entitled to an injunction as a matter of right when all violations have ceased and there is no reason to assume that the company will violate the Act in the future.

██ Under Article 3, Section 2 of the Constitution, the United States federal courts have jurisdiction to hear and determine "cases and controversies." A moot question does not present a case or controversy within the meaning of the Constitution. When in the course of a trial the matter in controversy comes to an end, either by an act of one or both of the parties or by operation of law, the question becomes moot and the court is without fur-

ther jurisdiction in the matter. In United States v. Alaska S. S. Co., 253 U.S. 113, 40 S.Ct. 448, 449, 64 L.Ed. 808, the Supreme Court said: " * * * It is a settled principle in this court that it will determine only actual matters in controversy essential to the decision of the particular case before it. Where by an act of the parties, or a subsequent law, the existing controversy has come to an end, the case becomes moot and should be treated accordingly. However convenient it might be to have decided the question of the power of the Commission to require the carriers to comply with an order prescribing bills of lading, this court 'is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. * * * ' [People of State of] California v. San Pablo & Tulare R. Co., 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747. * * * "

The difficult problem in cases of this character is to determine when the actual controversy has ceased and come to an end. The question whether cessation of unlawful practices subsequent to the institution of an action under an Act, renders the controversy moot, is not free from difficulty. Both parties cite numerous authorities in support of their position. A careful analysis of these decisions dissolves most of the apparent conflict in them.

In those cases in which an injunction was granted notwithstanding that the challenged practices had ceased, it generally appeared that there remained the possibility of a resumption of the challenged acts or the possibility of future violations or a question as to the validity of the Act or the administrative regulation, or some other matter of possible dispute between the parties. In Southern Pacific Terminal Co. v. I. C. C., 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310, the court recognized the general rule that a court will not entertain a moot question, but held that even though the order of the commission had expired, the question was not moot where interests of a public character were asserted under conditions that might be immediately repeated. Sears, Roebuck & Co. v. Federal Trade Commission, 7 Cir., 258 F. 307, 310, 6 A.L.R. 358, involved an injunctive order of the commission. The company had complied with the order; in fact, it had dis-

continued the practices complained of before the order was made. In upholding the order, the court said: "Here, no assurance is in sight that petitioner, if it could shake respondent's hand from its shoulder, would not continue its former course."

In Guarantee Veterinary Co. v. Federal Trade Commission, 2 Cir., 285 F. 853, it appeared that there was no assurance that the company would not return to its objectionable practices. In Fairyfoot Products Co. v. Federal Trade Commission, 7 Cir., 80 F.2d 684, the Board ordered the company to cease and desist from certain unfair trade practices. The company filed a form of compliance, attaching certain conditions thereto. Under these circumstances the court held that the discontinuance was not a bar to the order. The case of United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007, involved the validity of an order requiring railroad companies to dissolve an association, and adjudged illegal and void a certain agreement between the railroad companies. The railroad companies did not admit the illegality of the agreement, nor allege their purpose not to enter into a similar one in the immediate future. A number of cases have held that where, either by the conduct of the parties or by operation of law, the existing controversy has come to an end, the case has become moot. People of State of California v. San Pablo & T. R. Co., 149 U.S. 308, 13 S.Ct. 876, 37 L.Ed. 747; Fleming v. National Bank of Commerce, D.C., 41 F.Supp. 833; Walling v. Builders' Veneer & Woodwork Co., D.C., 45 F.Supp. 808; Fleming v. Phipps, D.C., 35 F.Supp. 627; Fleming v. Lincoln Loose Leaf Warehouse Co.,[1] Fleming v. Kull, D.C.E.D.Tex. June 16, 1941 [1].

It is the duty of the administrator to enforce the provisions of the Act and compel compliance therewith. An injunction may not be employed to punish past violations or to simply establish that violations had occurred. Its function is to stop existing violations or prevent further infractions if there is reason to believe that they may occur.

If issues are joined in an action in which the plaintiff alleges that the defendant is violating provisions of the Act or there is reason to believe that he will violate them, there is present a justiciable controversy. But if during the proceedings

---

[1] No opinion for publication.

violations cease and the accused admittedly is in full compliance, without reason to believe that future violations will occur, the justiciable controversy disappears and the question becomes moot. It would seem to be an idle gesture to enjoin violations of the Act when they have ceased and there is no reason to fear that they will again be renewed. When such a situation arises, it is the duty of the trial court to ascertain if there is reason to fear future violations. The court, in the discharge of this function, is invested with a sound discretion in reaching its conclusion as to whether an injunction should or should not be issued, and its decision will not be disturbed on appeal unless it appears that there has been an abuse of discretion.

An examination of the record in this case leads us to conclude that here there was no abuse of discretion.

The judgment of the court will therefore be affirmed.

MURRAH, Circuit Judge (dissenting).

I cannot agree that future good faith compliance, as established by the supplemental answer and the admissions of the Administrator in relation thereto, renders moot the issue of past violations as raised by the original pleadings. Neither does it render moot the question whether the court should, or should not, in the exercise of its discretion under Section 17 of the Fair Labor Standards Act, 29 U.S.C.A. § 217, restrain future violations under Section 15 of the Act.

The statutory complaint alleged repeated violations of Sections 7, 15, 29 U.S.C.A. §§ 207, 215, and regulations promulgated under Section 11(c) of the Act over a period of three years next preceding the filing of the complaint, by appellee's failure to observe the statutory requirements in respect to maximum hours and minimum wages for its employees. The original answer denied violations of Section 7 of the Act and relied upon an agreement with a representative of its employees constituting a compliance with the Act. The answer also challenged the constitutionality of the record keeping regulations under Section 11(c) of the Act, 29 U.S.C.A. § 211(c). Thus a real and substantial controversy was presented which the court had the duty to adjudge. Subsequently, by supplemental answer the company alleged that six months after the institution of this action it had entered into a new contract with another bargaining representative of its employees which superseded the former arrangements condemned by the complaint. It did not admit the alleged past violations or concede the constitutionality of that part of the Act which it had challenged.

The administrator admitted the sufficiency of the new contract and conceded the good faith intention of the company to comply in the future. He did not recede from his averments of past violations but sought a judicial determination of this question. The court did not adjudicate this issue by holding merely that the contract covering the prospective relationship of the employer and his employees constituted a full compliance with the Fair Labor Standards Act. Future compliance is not a confession of past violations, and in my judgment the issue of past violations was not mooted by a declaration of an intention to comply with the Act in the future, and the administrator is entitled to have this issue decided.' United States v. Trans-Missouri Freight Association, 166 U.S. 290, 308, 17 S.Ct. 540, 41 L.Ed. 1007; Southern Pacific Terminal Company v. Interstate Commerce Commission and Young, 219 U.S. 498, 516, 31 S.Ct. 279, 55 L.Ed. 310; Federal Trade Commission v. Goodyear Tire & Rubber Co., 304 U.S. 257, 260, 58 S.Ct. 863, 82 L. Ed. 1326; Jackson v. Denver Producing & Refining Company, 10 Cir., 96 F.2d 457.

Furthermore, the question whether the trial court should restrain future violations is not adjudicated by holding that the "complaint and answer herein have become moot and present no matters properly cognizable by this court." Section 17 of the Fair Labor Standards Act provides "the district courts of the United States * * * shall have jurisdiction, for cause shown * * * to restrain violations of Section 15 [section 215 of this title]." I agree with the majority that the question whether, under the attendant facts, a restraining order should issue is addressed to the sound discretion of the trial court after a hearing conducted for that purpose, but it does not appear that the court has exercised its discretion in this regard. The Act does not require a restraining order based upon a showing of past violations. It is authorized to restrain violations for "cause shown." It may be that the contract between the parties, coupled with restraints elsewhere contained in the Act is a sufficient determent to future violations and the court may find it unnecessary to impose additional restraints by

injunctive process, but the administrator is entitled to the judgment of the court on this unadjudicated issue. There is nothing in the judgment of the court which indicates an adjudication. It has neither issued the injunction nor refused to issue it. It was content to hold merely that no matters were properly cognizable by the court.

I would reverse the case with directions to proceed in accordance with these views.