## FAIRYFOOT PRODUCTS CO. v. FEDERAL TRADE COMMISSION.

### No. 5426.

Circuit Court of Appeals, Seventh Circuit.
Dec. 23, 1935.

Harris F. Williams and Burrell J. Cramer, both of Chicago, Ill., for petitioner.

W. T. Kelley, Martin A. Morrison, Robert N. McMillen, and James W. Nichol, all of Washington, D. C., for respondent.

Before EVANS and ALSCHULER, Circuit Judges, and STONE, District Judge.

ALSCHULER, Circuit Judge.

Petitioner seeks review of a "cease and desist" order[1] of the Federal Trade Commission upon its holding that petitioner had transgressed the Federal Trade Commission Act by its unfair competition in the advertising of a bunion plaster.

There is no question but that petitioner, in the marketing in interstate commerce of its bunion plaster, had employed the advertising methods condemned by the Commission's order. Petitioner maintains, however, that this matter was not properly objectionable, but was largely justified by the facts, and that where exaggeration appeared it was only such "puffing" of the article as is not violative of the law. Petitioner further contends, and the evidence fairly establishes, that long prior to the filing of the Commission's complaint petitioner had been informed by the Commission that the advertising matter was objectionable, and was asked to refrain from

---

[1] "It is Now Ordered that the respondent, Fairyfoot Products Company, its officers, agents and employees, forthwith cease and desist from representing in advertising matter, circular letters, by means of radio broadcast, or otherwise, in or in connection with selling or offering for sale in interstate commerce. its device or preparation known as 'Fairyfoot' bunion remedy treatment:

"That the treatment is approved by leading physicians and surgeons; that by the use of Fairyfoot bunions are dissolved, pain is stopped instantly, or almost instantly, and permanent relief follows; the foot again resumes its natural appearance and shape; bunion suffering is ended completely, the normal functions are stimulated; the absence of irritation and the continuous massage of the plaster plus the special 'Fairyfoot' formula gradually reduces the bunion hump; that 'Fairyfoot' gently dissolves the swelling caused by inflammation and should restore the foot to its normal appearance; it brings sure and certain relief from bunion suffering and the user can know the pleasure of bunion-free feet; and cease and desist from representing in any other or similar manner or words that its said device or preparation works a cure for, or gives permanent relief from, bunions, or attribute to it or its medicinal formula any result or effect other than that which may be derived from a mechanical device that relieves the pressure or irritation of the shoe at the affected part and temporarily relieves pain."

further employment of it; that thereupon petitioner modified its advertisements by eliminating the alleged objectionable features, destroying its plates which contained them, and preparing new advertising matter which was submitted to the Commission and was thereafter used; and that petitioner entered into an obligation to the Commission that the alleged objectionable matter would not again be, and that it was not thereafter, employed; that it was the practice of the Commission in such cases to accept this assurance, and not begin any proceeding based on the practices objected to which had been in good faith abandoned and were not thereafter renewed; that for over two years next preceding the commencement of the proceeding against the petitioner the matters called to its attention by the Commission as objectionable had been entirely eliminated, and were not used; that nevertheless, contrary to the practice of the Commission, the proceeding against petitioner was begun, predicated entirely upon the advertising matter which had long been discontinued; and that the findings of the .Commission and its "cease and desist" order were based wholly upon the abandoned advertising matter.

That petitioner's plaster has virtue may, for the purposes hereof, be conceded. Indeed, it would be quite unreasonable to assume that one putting out a purported remedy for an affliction would not employ some ingredients or means calculated to benefit some cases at some stage. But this would not justify such sweeping claims as the condemned items of this advertising matter disclose, which were evidently intended to induce in the public mind the belief that here was an absolute and unfailing panacea for bunions of. all kinds and degrees.

Just where lies the line between "puffing," which is not unlawful and unwarranted, and misleading representations in advertising, is often very difficult of ascertainment. But in our judgment this case does not present such embarrassment, since the advertising here condemned is well beyond any "puffing" indulgence.

We are satisfied that the record discloses substantial evidence to support the Commission's findings that the condemned advertising matter constituted unfair trade competition. In general, where the Commission's findings are thus supported, its order properly predicated thereon may not be disturbed by the courts. 15 U.S.C.A. § 45; Federal Trade Comm. v. Algoma Lumber Co., 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655; Federal Trade Comm. v. Pacific States Paper Trade Assn., 273 U.S. 52, 47 S.Ct. 255, 71 L.Ed. 534; Federal Trade Comm. v. Winsted Hosiery Co., 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729.

It seems that after the Commission first notified petitioner of the asserted impropriety in the advertising matter, petitioner, while maintaining the propriety of its advertising, expressed a willingness to comply with the Commission's wishes in the matter; and thereafter there was sent from the Commission to petitioner a form to be filled out, which embodied an undertaking to discontinue and not renew the methods of competition objected to as. unfair. This form petitioner filled out and signed and forwarded to the Commission. Probably this would have ended the matter but for the communication which petitioner sent the Commission with the executed form, stating: "If within six months from date any competitor publishes or uses in any form of printed matter words or phrases such as we have been barred from using, or any representations or statements equivalent thereto, in form or substance, we shall then feel at full liberty to resume any and all part of such phrases or words as are contained in the stipulation."

The Commission made no reply to this communication, but about two years later filed the complaint. Thereafter, in replying to petitioner's contention that the objectionable advertising had been long and .permanently discontinued, and an undertaking to that effect sent to the Commission, it was stated to petitioner on behalf of the Commission: "This condition made the acceptance of your stipulation impossible and the Commission declined to approve it, and then ordered that the complaint against you be issued and served."

While it would have been in line with good practice and gracious conduct for the Commission to notify petitioner that no such conditional stipulation could be or would be accepted, we are of the view that the imposition of the condition neutralized the ·stipulation as an undertaking to discontinue the alleged unfair trade practices. Besides, it has been often held that the mere discontinuance of an unfair competitive practice cannot serve to bar a "cease and desist" order based on that discontin-

ued practice, particularly where there is no definite assurance that it will not be renewed. Federal Trade Comm. v. Wallace (C.C.A.) 75 F.(2d) 733; Federal Trade Comm. v. Good-Grape Co. (C.C.A.) 45 F. (2d) 70; Lighthouse Rug Co. v. Federal Trade Comm. (C.C.A.) 35 F.(2d) 163; Arkansas Wholesale Grocers' Ass'n v. Federal Trade Comm. (C.C.A.) 18 F.(2d) 866; Moir v. Federal Trade Comm. (C.C.A.) 12 F.(2d) 22.

It is contended for petitioner that all its sales were made upon the stipulation that if after seven days' trial the customer is not satisfied with the remedy he may return the unused portion of it and the whole purchase price will be unconditionally refunded, and that this of itself indicates the absence of unfair trade practice. The unfairness alleged is not in any sale or sales, but in competition in the trade. If without any refund offer the methods to induce purchase of the articles are unfairly competitive, it is immaterial what the seller may propose to do in case the customer becomes dissatisfied. The unfairness, if any, lies in the methods of securing the order as against competitors, regardless of what thereafter may happen. In Harrison v. United States (C.C.A.) 200 F. 662, which petitioner cites with evident reliance, no such question was involved. In that case there were indictments for using the mails in furtherance of a scheme to defraud in the sale of washing machines and vacuum cleaners. It was held that a bona fide offer to refund in case of a buyer's dissatisfaction would have important and possibly controlling bearing upon the question of fraudulent scheme. But no question of fraud is here involved. Indeed, a given unfair competitive practice may exist even if the one accused of the practice is in entire good faith in its employment. Federal Trade Comm. v. Algoma Lumber Co., 291 U.S. 67, page 79, 54 S.Ct. 315, 78 L.Ed. 655; Federal Trade Comm. v. Balme (C.C.A.) 23 F.(2d) 615.

While the Commission's findings whereon its order herein is predicated are phrased in the present as well as in the past tense, we do not understand that these findings to any extent impugn or condemn the advertising matter employed by petitioner after its discontinuance of the advertising matter first complained of; nor that the order under review includes within its scope any of petitioner's advertising matter used after such discontinuance; and

it is upon such construction of the order that we conclude the order is in this respect, as well as otherwise, not objectionable.

The order of the Commission is affirmed.