**GALTER v. FEDERAL TRADE COMMISSION.**

**No. 9489.**

United States Court of Appeals
Seventh Circuit.

Feb. 5, 1951.

Henry H. Koven, Howard R. Koven, Chicago, Ill., for petitioners.

W. T. Kelley, General Counsel, Donovan Divet, Special Atty. Federal Trade Commission, James W. Cassedy, Associate General Counsel, Washington, D. C., for respondent.

Before KERNER, DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Petitioners seek to review and set aside a cease and desist order entered against them pursuant to a complaint charging them with unfair methods of competition and unfair and deceptive acts and practices in commerce, in violation of the Federal Trade Commission Act, § 5, 15 U.S.C.A. § 45. The Commission issued the complaint on February 4, 1941, after which this proceeding was consolidated for trial with another in which the respondents were jobbers who purchased for resale certain electric razors and cameras manufactured by

petitioners. Joint hearings were held from time to time until February 27, 1942, when petitioners and the attorneys for the Commission entered into a stipulation, whereby it was agreed that, subject to the approval of the Commission, the facts stated therein might be made a part of the record and "that upon such facts and upon the testimony and evidence already taken," the Commission might dispose of the proceeding. Between the date of signing the stipulation and its approval by the Commission, further hearings were held in the consolidated proceeding, at none of which petitioners were represented. The Commission, however, in making its findings, says that it did not rely upon the evidence adduced at these further hearings but considered only the stipulated facts, and such evidence as had been received prior to the date of the stipulation. The Commission, on August 14, 1947, entered its cease and desist order, whereupon petitioners filed their petitions to set aside the order or, in the alternative, to reopen the proceeding for the taking of further testimony, both of which were denied.

Although petitioners broadly assert "that the Order to Cease and Desist should be set aside in whole or in part," they have not attacked those paragraphs directing them to cease and desist from (1) falsely representing as the customary prices of their products prices in excess of those at which the products are ordinarily sold, (2) falsely representing that the prices at which their products are offered are special or reduced prices or are applicable for a limited time only, or (3) falsely representing that their products are guaranteed against defective workmanship and materials, but have confined their attack to those portions ordering them to cease and desist from (1) using the names "Elgin," "Remington" and "Underwood" on their products, and (2) representing as "candid-type" any cameras not equipped with special lenses and shutters or incapable of taking action pictures under unfavorable light conditions. Since the Commission has joined in the request that the court modify the order by striking those paragraphs relating to the representation of petitioners' cameras as "candid-type" cam-

eras, the issue before this court is as to the validity of that portion of the order which directs that petitioners cease and desist from using the names "Elgin," "Remington" and "Underwood."

In support of their contention that the prohibition against their use of the three names should be set aside, petitioners, asserting that their use of the names has been long since discontinued, cite Federal Trade Commission v. Civil Service Training Bureau, 6 Cir., 79 F.2d 113, 116, in which the court held that "The commission is not authorized to issue a cease and desist order as to practices long discontinued, and as to which there is no reason to apprehend renewal. L. B. Silver Co. v. Federal Trade Commission, 6 Cir., 292 F. 752; cf. United States v. U. S. Steel Corp., 251 U.S. 417, 445, 40 S.Ct. 293, 64 L.Ed. 343, 8 A.L.R. 1121." This court, in Eugene Dietzgen Co. v. Federal Trade Commission, 142 F.2d 321, at page 330, in considering the effect of the cessation of an unfair practice, indicated that it also was of the opinion that the Commission should not ordinarily enter an order in cases where the unfair practice condemned in the order had been discontinued, but went on to say: "On the other hand, *parties who refused to discontinue the practice until proceedings are begun against them* and proof of their wrongdoing obtained, *occupy no position where they can demand a dismissal.* The *order to desist* deals with the future, and we think it is somewhat *a matter of sound discretion to be exercised wisely by the Commission* * * * We are not satisfied that the Commission abused that discretion in the instant case." (Emphasis supplied.) This language, when considered in conjunction with the decisions of this court which have flatly held that discontinuance of an unfair practice will not of itself necessarily bar issuance of a cease and desist order based thereon, Fairyfoot Products v. Federal Trade Commission, 7 Cir., 80 F.2d 684, 686, or justify a court in refusing to enforce such order, Corn Products Refining Co. v. Federal Trade Commission, 7 Cir., 144 F.2d 211, 220, means, we think, that, in determining whether the Commission has abused its discretion in ordering a petitioner to

desist from an unfair practice which he has already halted, the court is concerned largely not with the period of time which has elapsed between the cessation and the entry of the order but with the time from the date of cessation to the date of issuance of the complaint.

It was stipulated, in the instant proceeding, that petitioners had used the name "Elgin" on their products for three months during the fall of 1939 and that they had manufactured electric razors marked "Underwood" and cameras marked "Remington," the latter having been made for the DeLuxe Products Company and the word "Remington" placed thereon at that company's request.[1] The stipulation is silent as to the exact dates of use of the marks "Underwood" and "Remington," but petitioners, in their petition to set aside the Commission's order, averred that they had not been used "since entering into the Stipulation as to the Facts in February, 1942 * * *." If these allegations are accepted as true, the result is that the use of two of the three names is not shown to have been discontinued until more than a year after issuance of the complaint, which does not, in the absence of other evidence, even tend to prove that the discontinuance was voluntary and most certainly does not, in view of the well-settled rule that the mere discontinuance of an unfair practice is of itself no bar to issuance of a cease and desist order based thereon, Fairyfoot Products Co. v. Federal Trade Commission, 7 Cir., 80 F.2d 684, 686, Corn Products Refining Co. v. Federal Trade Commission, 7 Cir., 144 F.2d 211, 220, warrant a holding that the Commission abused its discretion in entering the order or in declining to set it aside. Eugene Dietzgen Co. v. Federal Trade Commission, 7 Cir., 142 F.2d 321, 330. The improper use of the names in the past was a stipulated fact. And though petitioners have asserted abandonment of the practice,

they still contend in this court that they have a right to continue it. They express no intention to refrain from it; they make no promise to do so. Under these circumstances, the commission was fully justified in believing that the claimed cessation of wrongful action was not voluntary but brought about by the commission's proceeding and that, in view of petitioners' continued insistence that they might use each of the three names and the absence of any assertion or proof of intent not to renew their use and of any promise so to do, it was in the public interest to enjoin such use. With such exercise of discretion we may not interfere.

In petitioning the Commission to set aside its order or reopen the proceeding, petitioners urged that they should be released from the stipulation on which the order was based for the reason that "in violation of the terms of the stipulation * * * hearings were held in this cause subsequent to the date of the filing of said stipulation * * * at which hearings evidence adverse to the interests of these respondents was introduced * * *." Before this court, however, petitioners have taken a somewhat different position. Although they contend that holding hearings in the consolidated cause subsequent to the signing of the stipulation without notice to them constituted a denial of due process, they inconsistently complain that the Commission did not consider the evidence adduced at those hearings which, they say, indicated that a substantial number of the facts stipulated were not true, and urge that, for this reason, the stipulation and, of course, the cease and desist order based thereon, should be set aside by this court. The Commission, although denying that hearings were held in violation of the stipulation or without notice to petitioners, contends that, in any event, petitioners were not prejudiced thereby since none of the

1. Petitioners' argument that this fact somehow absolves them of any responsibility for the use of the name "Remington" is patently without merit, for it is clearly established that one who places in the hands of another a means of consummating a fraud or competing unfairly in violation of the Federal Trade Commission Act is himself guilty of a violation of the Act. Federal Trade Commission v. Winsted Hosiery Co., 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729; Marietta Mfg. Co. v. Federal Trade Commission, 7 Cir., 50 F.2d 641, 642; Perloff v. Federal Trade Commission, 3 Cir., 150 F.2d 757, 759–760 (CA–3).

evidence received at those hearings was considered in disposing of the proceeding against petitioners; it contends further that the evidence received at those hearings does not show that the facts stipulated are not true.

The express statement in the stipulation that the Commission might render its decision upon the facts stated therein "and upon the *testimony and evidence already taken* in this proceeding" (Emphasis supplied) would hardly seem to constitute an agreement that no more hearings were to be held but would rather indicate that it was contemplated that there would be more hearings but that, if the Commission approved the stipulation, the evidence taken at those hearings would not be considered in disposing of the instant proceeding. Certainly, it is obvious that additional hearings were necessarily held in the proceeding with which the instant proceeding had been consolidated, for the respondents in that proceeding were not parties to the stipulation. Such hearings had, in fact, been scheduled and petitioners notified thereof prior to signing the stipulation. But, even assuming that petitioners had no notice of the hearings and that evidence adverse to their interests was received at those hearings, still there is no denial of due process shown, for there is, in the record, nothing to indicate that the Commission violated that provision of the stipulation by which it agreed that it would consider only the facts stipulated and the evidence already taken, in disposing of the case, and to argue that the Commission's adherence to its agreement with petitioners constituted a denial of due process to them is to take an obviously untenable position.[2]

There remains petitioners' contention that the evidence received in the companion proceeding subsequent to the signing of the stipulation indicated that a substantial number of the facts stipulated were untrue and required that the stipulation be set aside. The evidence on which they rely revealed that the names "Elgin," "Remington" and "Underwood" were used by companies other than the Elgin Watch Company and the Remington and Underwood Typewriter Companies. This evidence, they say, indicates that the stipulation is incorrect in stating that the names in question are the exclusive property of the aforementioned companies.[3] Assuming arguendo that the evidence did show that the stipulation was erroneous in this respect, we cannot see that petitioners can be benefited thereby, for this is not an action for trademark violation but a proceeding to protect the public against fraud and deception, and the evidence taken in the companion proceeding did not disclose any right in petitioners to use the names "Elgin," "Remington" and "Underwood" in such a manner as to mislead the public into believing that petitioners' products were the products of the Elgin, Remington or Underwood Corporations. Nor does it indicate that the stipulation was erroneous in stating that the Commission had witnesses available who would testify that they had been or would be so misled, and induced, as a consequence thereof, to buy petitioners' products.[4] Thus, the Commission's order would have substantial support in the evidence even though the statements that the names in question belonged exclusively to Elgin, Remington and Underwood were wholly disregarded.

2. That the Commission did not consider any evidence taken at the subsequently-held hearings in the consolidated cause is admitted by petitioners themselves and is, in fact, the premise upon which they base their contention that the Commission erred in failing to set aside the stipulation as patently untrue.

3. Petitioners also state that this evidence accounts for the dismissal of the complaint against the respondents in the companion proceeding, but the dismissal order entered by the Commission in that proceeding clearly indicates that dismissal was predicated on the fact that the respondents had not manufactured or selected the trade names for the products referred to in the complaint or done any of the advertising referred to therein, but were merely jobbers who had purchased the products from the petitioners herein.

4. The stipulation provided that the Commission might consider these statements and give to them the same credence as if the witnesses were called.

Petitioners, in their alternative petition to set aside the order or reopen the proceeding, for the first time directed the Commission's attention to the dissolution, late in 1943, of the corporate petitioners American Supercraft Corporation and Match King, Inc., also sometimes known by its trade-name, Monarch Manufacturing Company, their dissolution having been accomplished through voluntary proceedings brought by the stockholders, officers and directors of the respective corporations. This disclosure was made in connection with petitioners' argument that their abandonment of the unfair practices against which the order had been issued made that order unnecessary and improper. Although we have rejected the contention that the order should have been set aside because of such abandonment, the fact that the corporations have been dissolved raises a question as to the propriety of the entry of the order against them.

The Commission argues that Section 157.94, Chapter 32, Illinois Revised Statutes, providing that "The dissolution of a corporation * * * shall not take away or impair any remedy available * * * against such corporation * * * for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution", authorizes issuance of a cease and desist order against the dissolved corporations, but the cases interpreting that section and its predecessors are strikingly devoid of even the slightest suggestion that the provision that a dissolved corporation shall, for a limited time after dissolution, be held legally responsible for any *liability incurred prior to dissolution* can be extended so far.

In Life Association of America v. Fassett, 102 Ill. 315, the Illinois court considered at length the purpose and effect of a statutory provision extending the existence of a dissolved corporation for two years from the date of its dissolution. The court there observed, at page 323: "Upon the dissolution or civil death of a corporation, all its real estate, by the strict rule of the common law, reverts to the original owners or their heirs, and all its personal estate vests in the Crown, in England, and the State here, and all debts due to or from it are by operation of law extinguished. * * * With a view of mitigating the rigor of the common law with respect to the effects of a defunct corporation, the legislature of this and most, if not all, of the other States of the Union have, by appropriate legislative enactments, provided for a just and equitable distribution of their assets in cases of insolvency, or sudden dissolution from any cause, and our own act on the subject contains a provision which in express terms extends their corporate existence two years from the date of their dissolution, for such purpose." The court concluded, at page 324: "From these and other provisions of the statute it clearly appears that it is a part of the settled policy of the State, at least so far as domestic corporations are concerned, that upon their dissolution, however that may be effected, they shall nevertheless be regarded as still existing for the purpose of settling up their affairs and having their property applied for the payment of their just debts * * *.' The influence of this decision on subsequent Illinois cases is noted in the court's opinion in Evans v. Illinois Surety Co., 298 Ill. 101, at page 108, 131 N.E. 262 at page 264, in which, after quoting at length from the Fassett case, the court stated: "The doctrine of this opinion has never been modified or changed, and in some respects it has been specifically approved in several decisions. St. Louis & Sandoval Coal Co. v. Sandoval Coal Co., 111 Ill. 32; Singer v. Hutchinson, 183 Ill. 606, 56 N.E. 388; Eau Claire Canning Co. v. Western Brokerage Co., 213 Ill. 561, 73 N.E. 430; Commercial Trust Co. v. Mallers [242 Ill. 50, 89 N.E. 661], supra; Edwards v. Schillinger, 245 Ill. 231, 91 N.E. 1048, 33 L.R.A.,N.S., 895."

Although the earlier Illinois statutes were perhaps more explicit in providing for the continued existence of a dissolved corporation for the purpose only of

winding up its affairs, it would seem quite evident, in the light of the Illinois cases construing such statutes and the public policy expressed therein, that the current provision does no more than preserve for a two-year period, the corporation's liability for acts performed by it prior to its dissolution but does not make it subject to an injunction against acts to be performed in the future, especially where, as here, the acts sought to be enjoined are in no way related to the winding up of the corporate affairs and are, therefore, (in view of the Supreme Court's statement, in Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 129, 58 S.Ct. 125, 129, 82 L.Ed. 147 that "The only power left to the corporation * * *, (after dissolution) * * * was to finish pending cases begun within two years after its dissolution. With that exception, its corporate powers were ended for all time and for all purposes."), beyond the dissolved corporation's power to perform. Such was the construction accorded the statute by the District Court in Laning v. National Ribbon & Carbon Paper Mfg. Co., 40 F.Supp. 1005, the court stating, at page 1006, "It seems to me quite evident that the Legislature intended that the decree dissolving the corporation should terminate its existence absolutely except for the purpose of enabling a creditor to maintain an action against it", and such has been the construction generally accorded statutes extending the existence of a corporation after dissolution, Fletcher Cyc. Corp., Perm. Ed. (1942 Revised Vol.), § 8170. Thus it seems clear that the Commission, when the dissolution of the corporate petitioners was brought to its attention, should have amended its order by striking therefrom the names of the aforementioned corporate petitioners.

The order of the Commission is modified by striking therefrom paragraphs 1(g) and 5(f), as requested by the Commission, and by striking therefrom also the names of American Supercraft Corporation and Match King, Inc. In all other respects, and as so modified, the order is approved, confirmed and ordered enforced.