OREGON–WASHINGTON PLYWOOD CO.
v. FEDERAL TRADE COMMISSION
and 12 other titles.

Nos. 12774, 12791–12793, 12798–12800, 12802, 12788–12790, 12797, 12801.

United States Court of Appeals
Ninth Circuit.
Jan. 24, 1952.

George J. Perkins, Portland, Or., E. N. Eisenhower, Chas. D. Hunter, Jr., James V. Ramsdell, Henry C. Perkins, all of Tacoma, Wash., Skeel, McKelvy, Henke, Evenson & Uhlmann, McMicken, Rupp & Schweppe, Alfred J. Schweppe, M. A. Marquis, John N. Rupp, all of Seattle, Wash., Krause, Hirsch, Levin & Heilpern and Raymond T. Heilpern, all of New York City, J. E. Nolan, Tacoma, Wash., Briggs, Gilbert, Morton, Kyle & Macartney and J. Neil Morton, all of St. Paul, Minn., Sabin & Marlarkey, Robert L. Sabin, and Howard H. Campbell, all of Portland, Or. and Owen P. Hughes and Neal, Bonneville & Hughes, all of Tacoma, Wash., for petitioners.

W. T. Kelley, Gen. Counsel, James W. Cassedy, Asst. Gen. Counsel, Alan B. Hobbes, Attorney, Fed. Tr. Com., all of Washington, D. C., for respondent.

Before STEPHENS, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

This matter is before us upon petitions to review and set aside cease and desist orders issued in proceedings by the Federal Trade Commission on complaints charging petitioners with engaging jointly in acts hindering and restraining competition in interstate commerce in certain lumber products, in violation of § 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45 (a). Before the Commission there were two groups, against whom separate complaints were lodged, one referred to as the "Plywood" group, the other as the "Door" group, the members of which operate in the state of Oregon or Washington or both. So far as material here the Commission's complaints were the same in each case, and the answers interposed by the two groups were substantially identical.

The complaint as against the members of the Plywood group was initiated March 1, 1948, and was amended May 19, 1949. That as against the Door group was issued February 26, 1948, and was amended August 8, 1949. Details of the complaints need not be gone into. They alleged in paragraph Seven thereof that the parties named had jointly engaged in the unlawful activities charged "since prior to January 1936," in the Plywood case, and "since January, 1938" in the Door case, down to the date of the complaint.

Shortly subsequent to the issuance of the amended complaints in 1949, the petitioners filed their answers. These recite that in order to expedite the proceeding and to prevent disorganization consequent upon litigation, etc., the petitioners, answering the amended complaint, "state that they admit all of the material allegations of fact set forth in said complaint, provided this admission be taken to mean that the understanding, agreement, combination, conspiracy and planned common course of action alleged in paragraph Seven of the amended complaint existed and continued only for a substantial part of the period of time charged in the amended complaint, to wit, for a substantial part of the period between May, 1935, to August 1, 1941, and not otherwise, and, except to the extent of such admission, deny all of the material allegations of fact set forth in the complaint, and waive all intervening procedure and further hearing as to the said facts.

"Any and all admissions of fact made by respondents herein are made solely for the purpose of this proceeding, the enforcement or review thereof in the Circuit Court of Appeals, and for any review in the Supreme Court of the United States, or for any other proceeding in enforcement of the order to be entered herein, or to recover any penalty for violation thereof which may be brought or instituted by virtue of the authority contained in the Federal Trade Commission Act as amended, and for no other purpose, but reserving the right of a hearing with oral argument and filing of briefs before the Commission as to what order, if any, should be issued upon the facts hereby admitted." [The above is from the answer of the Plywood group. The verbiage is the same in the answer of the Door group save as to the period of time covered by the admitted violations. This is alleged to have been "from January 1, 1938, to November 29, 1941."]

No evidence was taken in the proceedings. On September 30, 1949, after the filing of the answers, the trial examiner entered an "order closing reception of evidence and all other proceedings before trial examiner." Thereafter briefs were filed and oral argument had before the Commission. In October 1950 the Commission made findings and entered the cease and desist orders in question.

The position of the petitioners is simply that no cease and desist order of any kind should have been entered against them in view of their uncoerced discontinuance of the illegal activities long prior to the initiation of the complaints. In each instance the period is in excess of six years. The Commission, on the other hand, declines to con-

cede that the activities were discontinued. It relies on the rule that a conspiracy once shown to exist is presumed to continue until its abandonment is shown, and it says that, in the absence of affirmative proof to the contrary, it is to be presumed that the petitioners have continued to pursue the objectionable practices they admit once having followed. Whether this is a valid argument in the state of the record is a matter we will consider in a moment.

The Commission did not in terms find that the unlawful combination or practices had persisted beyond the period admitted. To the contrary paragraph Seven of the findings, in conformity with the answers, states that the illegal activities existed, in the Plywood case, "during a substantial part of the period of time between May, 1935, and August 1, 1941," and, in the Door case, that they persisted "during a substantial part of the period of time between January 1, 1938, and November 29, 1941." However, paragraph Nine of the findings in the Plywood case reads:

"The capacity, tendency and results of the aforesaid understanding, agreement, combination, conspiracy and planned common course of action, and the acts and things done thereunder and pursuant thereto, by the respondents, as hereinbefore set forth, have been *and now are:*

"(a) To interfere with and curtail" production, etc. [Emphasis supplied.]

The cognate finding in the Door case, while differing somewhat in detail, is in substance the same.

In respect of the italicized phrase importing a presently operative interference with commerce, namely, the phrase "and now are," petitioners say that the finding has no support whatever in the record. Whether or not it has evidentiary support depends necessarily on the validity of the Commission's argument that the conspiracy among the petitioners is presumed to have continued.

■ Resolution of this question requires a consideration of the state of the plead-

ings, there having been nothing else in the way of evidentiary matter before the Commission. The procedure followed by that body of entering an order based upon the complaint as admitted in part and denied in part appears analogous to a motion for judgment on the pleadings, where denials and allegations of the answer which are well pleaded are to be taken as true. Beal v. Missouri Pacific R. Corp., 312 U.S. 45, 51, 61 S.Ct. 418, 85 L.Ed. 577. The Commission does not appear to dispute this. It undertakes to outflank the point by interpreting the answers as constituting no more than a statement of what the answering parties admit, not as putting in issue the allegations of the complaint. We are unable to agree that this is a permissible interpretation. The admissions are so couched as clearly to negative any contrary state of facts. Even if this were not so the answers, "except to the extent of such admission, deny all of the material allegations of fact set forth in the complaint." The Commission came forward with no evidence in support of the challenged allegations of its complaint, being content apparently to accept the admission answers as bracketing the facts.[1] Having elected to follow this procedure the Commission may not now presume that the group activities charged continued beyond the termination date alleged in the answers. Accordingly nothing appears in the record to support finding number Nine so far as it relates to the present.

Assuming that its construction of the answers is wrong, the Commission argues that nevertheless the entry of a cease and desist order was not improper. We turn to this contention.

■ It is of course well settled that discontinuance of an illegal practice does not of itself render inappropriate the entry of a cease and desist order. The propriety of such an order in any particular case must depend on a consideration of all the surrounding facts and circumstances; and where the activities charged have been

1. Rule 18(a) of the Rules of Practice of the Federal Trade Commission, 15 U.S.C. A. following § 45, puts on counsel sup-

porting the complaint the burden of proving the factual propositions put forward in it.

discontinued, the elements of time, volition, and general attitude of the respondents in respect of the cessation are necessarily factors of prime importance. Parties who have abandoned their challenged practices only after proceedings are brought against them are in no position to complain of a cease and desist order. In such a case the discontinuance can hardly be thought voluntary. Nor may those be heard to complain of an order who insist that they have the right to pursue a given practice notwithstanding they no longer follow it. Galter v. Federal Trade Commission, 7 Cir., 186 F.2d 810, 813. Again, voluntary discontinuance a relatively short time before the institution of proceedings may be thought not to afford satisfactory assurance that the practice will not be resumed.

Only a handful of cases have been cited in which the point is directly discussed. It is said in Eugene Dietzgen Co. v. Federal Trade Commission, 7 Cir., 142 F.2d 321, 331, that "The object of the proceeding is to *stop* the unfair practice. If the practice has been surely stopped and by the act of the party offending, the object of the proceedings having been attained, no order is necessary, nor should one be entered. If, however, the action of the wrongdoer does not insure a cessation of the practice in the future, the order to desist is appropriate." In the Galter case, supra, [186 F.2d 812] the court observed that "in determining whether the Commission has abused its discretion in ordering a petitioner to desist from an unfair practice which he has already halted, the court is concerned largely not with the period of time which has elapsed between the cessation and the entry of the order but with the time from the date of cessation to the date of issuance of the complaint." The Commission itself in a recent decision dismissing a complaint,[2] has stressed the probable lack of a present public interest in respect of practices discontinued long prior to the institution of proceedings. There the original complaint issued in June 1944, and the acts claimed to show an unlawful purpose on the part of the respondents took place between January 1938 and February 1940. Commissioner Mason, who concurred specially in the dismissal, commented on the purpose of reaching in their incipiency combinations leading to undesirable trade restraints, and remarked that in the case in question the Commission appears to have "tackled this problem at the tomb instead of at the womb."

The record here is silent as regards the existence of any special circumstances suggesting a likelihood that the petitioners will resume the practices discontinued so many years prior to the issuance of the complaints. It seems, indeed, doubtful that the orders in question would have been entered had not the Commission erroneously indulged the presumption that the activities continued. The discretion residing in the Commission is a reasoned discretion, not an arbitrary one, and we are unable to see any substantial ground for inferring that the present public interest is served by the Commission's action.

The cease and desist orders are accordingly set aside.

2. Grocery Distributors Association of Northern California, etc., 44 Federal Trade Commission Decisions 1200.