**WALLING, Adm'r of Wage and Hour Division, U. S. Department of Labor, v. LACY.**

Civil Action No. 515.

District Court, D. Colorado.

Sept. 3, 1943.

Irving J. Levy, Acting Sol. of Washington, D. C., Kenneth P. Montgomery, Regional Atty., of Chicago, Ill., and Reid Williams, Atty., Wage and Hour Division, Department of Labor, of Denver, Colo., for plaintiff.

Joe E. Gobin, of Pueblo, Colo., and Frederick P. Cranston, of Denver, Colo., for defendant.

SYMES, District Judge.

This is an action by the Administrator of the Wage and Hour Division of the Department of Labor against Mayme Lacy, doing business as "The Rocky Ford Daily Gazette-Topic".

According to the allegations and the proof the defendant was, and is, the sole operator and publisher of a printing plant located in Rocky Ford, Colorado, publishing a newspaper under the above name. In addition a small job printing business is carried on. She prints and sells such articles as shipping tags, labels, envelopes, circulars, advertising matter, and other job printing products. The business gives employment to seven persons. It is claimed defendant is engaged in interstate commerce, and we so held on preliminary argument of that question. This principally because, as the Government contends letterheads and envelopes printed for defendant's customers went into the United States mails for delivery outside the state of Colorado. And also because the newspaper printed a small amount of national advertising, so-called, such as automobiles, Standard Oil Company products, patent medicines, and national brands of soap, coffee, etc. To so hold the court made a somewhat strained definition of interstate commerce. The principal circulation of the newspaper is wholly within the neighborhood in which it is published, to wit, Otero County, Colorado.

It is alleged: Provisions of §§ 6 and 15 (a) (2), of the Fair Labor Standards Act, 29 U.S.C.A. §§ 206, 215(a) (2), were violated, because many of the employees were paid wages during the time in question of less than 25 cents an hour. The provisions of §§ 7 and 15(a) (2), 29 U.S.C.A. §§ 207, 215(a) (2), were violated, because said employees, engaged in interstate commerce, worked more than 44 hours a week; and the defendant failed to make, keep and preserve adequate and accurate records of her employees, wages paid, hours worked and other conditions and practices of employment as prescribed by regulations promulgated by the Administrator of the Wage and Hour Division of the Department of Labor.

The defendant alleges the business was founded and operated prior to his death on March 10, 1940, by her husband, J. B. Lacy; that she inherited the business and has been trying to keep it going. She alleges she believed she was at all times complying with the law.

The case was tried in part on a stipulation of facts, by which defendant admits the violations of the statute and regulations as alleged in the complaint. Further, the evidence indicates the defendant freely admitted the violations when they were called to her attention by the Government inspectors, who literally moved in on her business. However, she has made an honest effort to correct everything they complained of, and an inspection made before trial indicated all violations have been corrected, and she now keeps her books and records in a manner satisfactory to the Government, and is paying wages in full compliance with the Fair Labor Standards Act.

1004

The first visitation by the Government was in May, 1942, when defendant was fully advised how to comply with the law. After that date there were a few further violations disclosed on an inspection in the following August. These were immediately corrected. Her main trouble seems to have been her ignorance of modern bookkeeping procedure—she simply trying to keep this small, local business going to afford employment to her neighbors living in this small agricultural community.

I cannot agree with the Government's contention that her intention to comply with the law has not at all times been sincere and in good faith. Furthermore her employees—who were not paid what they should have been under the Act—were satisfied and made no complaints until the violations were discovered by Federal inspectors, who caused trouble between the employees and their employer, and nearly required the plant to be shut down.

█ It is well settled that an injunction cannot be granted to restrain past violations of the law, and where in the course of the proceedings in a litigated matter the controversy between the parties has come to an end by the act of either of the parties, the question is "moot" and the court is not required to take any further action. Walling v. Shenandoah-Dives Mining Co., 10 Cir., 134 F.2d 395.

█ An injunction can only be granted where there is a threat of sufficient seriousness and imminence to justify coercive relief. Restatement of the Law "Torts" Vol. 4, p. 683. Page 684: An injunction is not justified, however, by the mere fact that the defendant is in a position where he will be tempted to commit a tort * * * nor by the fact the plaintiff fears that the defendant will commit a tort. Page 717: The local community, as here, sometimes has an interest at stake.

In Walling v. Shenandoah-Dives Mining Co., March 8, 1943, supra, our Court of Appeals held that when in the course of a trial the matter in controversy comes to an end, either by the act of one or both of the parties, or operation of law, the question becomes "moot", and the court is without jurisdiction. The case also holds that an injunction cannot be employed to punish past violations, or to establish that violations had occurred. But its function is to stop existing violations, or prevent further infractions, if there is reason to believe they may occur. And if, during the action brought to enjoin violations of the Fair Labor Standards Act, the alleged violations cease, and there is no reason to believe future violations will occur, the question becomes "moot", and an injunction will not be granted. And, finally, that the district court's determination as to whether there is reason to fear future violations will not be disturbed unless it appears there has been an abuse of discretion.

█ In Fleming v. National Bank of Commerce, D.C., 41 F.Supp. 833, the court held that whether or not the plaintiff is entitled to an injunction against the defendant restraining future violations of the Fair Labor Standards Act, depends on whether there is reasonable cause for apprehending that the defendant may resume in the future a course of conduct in violation of the Act.

The purpose of an injunction is (page 835 of 41 F.Supp.): "to deter a defendant from engaging in the prohibited acts and not to punish him for past conduct. * * * But it by no means follows that the plaintiff is entitled to an injunction merely upon a showing of past violations. * * * I do not interpret this statute to mean that the Court should automatically issue an injunction in all cases where violations of the statute are shown or admitted. Each case must be measured and decided according to its own circumstances".

█ Applying this test, an injunction is not indicated in the instant case. The defendant, as a result of the harassing by Government agents, is most fearful of them and of the penalties of the Act. She is thoroughly chastened. The few violations that occurred after the matter was first called to her attention were due solely to her ignorance and lack of experience, and inability as a layman to comprehend the technicalities and the requirements and decrees of the Act, and the orders issued pursuant thereto.

Peace reigned between this employer and her employees until the employees were apprized of their rights by the investigators, after being interrogated by Government agents. The defendant, as a result of her past experience and the time and expense involved in coming to Denver for trial—168 miles from home—is fully cognizant of the penalties of further violations of this sumptuary legislation. She

has expressed to the Government and the court her desire to fully comply with the demands and exactions of the Administrator. Surely the all-powerful Administrator could ask for nothing more.

Fleming, Adm'r, v. Phipps, D.C., 35 F.Supp. 627, points out that injunctions should not be granted under this Act unless there is adequate cause shown therefor, in accordance with applicable principles of equity, and will not be granted where the wrong complained of has fully and definitely terminated, and the chancellor is convinced—as we are from the proof—that there is no likelihood of repetition. Citing cases.

See also United States v. United States Steel Corp., 251 U.S. 417, at page 445, 40 S.Ct. 293, 64 L.Ed. 343, 8 A.L.R. 1121.

Let the action be dismissed.