## UNITED STATES v. CEMENT INSTITUTE et al.

Civ. No. 1291.

United States District Court
D. Colorado.

July 18, 1949.

Peter J. Donoghue, Chief, Mountain States Office, Department of Justice, Anti-Trust Division, Denver, Colo., Max M. Bulkeley, United States Attorney, Denver, Colo., for plaintiff.

Grant, Shafroth & Toll, Lindsey, Larwill & Wolfe, Lewis, Grant, Newton, Davis & Henry, Hughes & Dorsey, John R. Moran, Kenneth W. Robinson, Van Cise & Van Cise, George A. Crowder, Erskine R. Myer, Dines, Dines & Holme, Bannister, Weller & Friederich, Denver, Colo., for defendants.

SYMES, District Judge.

This action was filed June 28, 1945, under § 4 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 4, investing the district courts with jurisdiction to prevent and restrain violations of §§ 1 to 7 of that Act, 15 U.S.C.A. §§ 1–6, 15 note.

The matter is now before the court on the motion of 57 corporate defendants—including the Cement Institute—to dismiss the complaint for lack of jurisdiction as a court of equity, and that the action or controversy has become moot, and further, because defendants have forever been restrained by court decree and administrative order from committing the offenses charged in the complaint.

This reference is to a decree entered by the Circuit Court of Appeals for the 7th Circuit on July 27, 1948, in Aetna Portland Cement Co. v. Federal Trade Commission et al., and an order to cease and desist of the Federal Trade Commission dated July 17, 1943, in the matter of the Cement Institute et al., which became final on July 9, 1948.

In support of the motion it is argued that the controversy is ended, and is no longer within the jurisdiction of the court,

relying upon the holding of this court in Walling v. Shenandoah-Dives Mining Co., affirmed in 10 Cir., 134 F.2d 395. In that case the Circuit Court of Appeals said, 134 F.2d at page 396: "When in the course of a trial the matter in controversy comes to an end, either by an act of one or both of the parties or by operation of law, the question becomes moot and the court is without further jurisdiction in the matter." Also upon the rule that upon a challenge to the jurisdiction of the court the burden of establishing jurisdiction is upon the Government.

On June 9, 1948 the Supreme Court of the United States issued its mandate to the Circuit Court of Appeals for the 7th Circuit, sustaining the order of the Federal Trade Commission, dated July 17, 1943. Later the Circuit Court of Appeals for the 7th Circuit entered its final decree, commanding obedience to the Federal Trade Commission order to cease and desist.

The gist of the complaint is that the defendants "have been and now are engaged in an unlawful combination and conspiracy to fix and maintain high, unreasonable, identical, and non-competitive prices on the sale by them of cement;" that they accomplish this by an agreement to sell, and by selling, "all the cement produced by them on a so-called multiple basing point system, on a delivered price basis only" on standard terms and conditions, and at net mill prices which are systematically varied "so that each may quote identical given prices at any given locality, regardless of differences in actual transportation costs".

The decree of the Circuit Court of Appeals directs that the moving defendants "do forthwith cease and desist from entering into, continuing, cooperating in, or carrying out any planned common course of action, understanding, agreement, combination, or conspiracy between and among any two or more of said respondents, or between any one or more of said respondents and others not parties hereto, to do or perform any of the following things:" The defendants argue that the effect of the decree and order prohibits and stops each of the violations charged against the moving defendants in the present complaint.

The complaint, however, charges that the defendants "threaten to continue such offenses and will continue them," unless relief is granted, in spite of the fact that the Commission's order and the Circuit Court of Appeals decree both direct the moving defendants to "forthwith cease and desist from entering into, continuing, cooperating in, or carrying out any" combination or conspiracy of any type, such as charged in the complaint; that the decree and order have removed the threat of, or the continuance of, the conspiracy or its revival in the future.

It will be observed that the prohibitions embraced within the decree and order carry a double sanction, in that the violation of either is a violation of the other, and apply not only to the corporate defendants, but to the officers, agents, representatives and assignees, etc.

It is next argued that there is a presumption that the moving defendants since the entry of the decree and order, have not and will not engage in the practices complained of in the instant action, and in the light of this legal presumption there can be no reasonable expectation or fear that the alleged violations will be repeated in the future.

People of State of California v. San Pablo & Tulare Railroad Co., 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747, is cited as laying down the rule of mootness. It states the rule to be: " * * * But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it."

Counsel admit an injunction cannot be granted to restrain possible violations of law, and where in the course of proceedings in a litigated matter the controversy has come to an end, the question is moot and the court is not required to take any further action. Walling v. Lacy, D.C.Colo. 1943, 51 F.Supp., 1002.

Assuming for the purpose of the motion only that a conspiracy of a continuing nature once established may be presumed to continue until the contrary is

346

shown, the question necessarily arises, what evidence is necessary to show abandonment, or the end of the conspiracy. It is argued that the presumption of continuance of the conspiracy in the case at bar is rebutted by the Circuit Court of Appeals decree and the Commission order enjoining the defendants from performing the practices complained of in the present action. It is a well-established principle of equity that an injunction is an extraordinary remedy and will not be granted on mere apprehension of future injury.

Counsel for the motion argue the decrees of the Circuit Court of Appeals and the Federal Trade Commission remove any danger of future violations of the kind charged against these moving defendants.

The vital defect in their argument is that this action is brought under § 4 of the Sherman Act, 15 U.S.C.A. § 4, while the so-called Federal Trade Commission case—which is the basis of the Federal Trade Commission order, and decree of the Circuit Court of Appeals for the 7th Circuit—charges violation of § 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45, and § 2 of the Clayton Act, 15 U.S.C.A. § 13.

In that proceeding the Federal Trade Commission issued a cease and desist order, ordering defendants to forthwith cease and desist from entering into, continuing, co-operating in, carrying out, any planned course of action, understanding, agreement, combination, or conspiracy between or among any two or more respondents to do or perform certain things therein specified. Among the things enjoined was "quoting or selling of cement in accordance with the multiple basing point delivered price system or any other plan or system resulting in identical price quotations." The record discloses the Sherman Anti-Trust Act was not invoked in that proceeding.

An appeal was taken to the Circuit Court of Appeals for the 7th Circuit, which set aside and vacated the cease and desist order. The Federal Trade Commission appealed to the Supreme Court, which on April 26, 1948, reversed the Circuit Court of Appeals, and directed that court to enforce the cease and desist order of the

Commission. Federal Trade Commission v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1009.

The defendants now move to dismiss the instant case on the grounds mentioned, that this court lacks jurisdiction, because the controversy has become moot and lacks equity, and that the defendants have forever been restrained by the Commission and the Circuit Court of Appeals.

It is conceded that at the time this action was filed in June, 1945, this court had jurisdiction by virtue of § 4 of the Sherman Anti-Trust Act. Further, the Federal Trade Commission Act provides that jurisdiction granted to the Commission shall not prevent or interfere with the enforcement of the Sherman Act. See § 5(e), 15 U.S.C.A. § 45(e), and § 11 of the Federal Trade Commission Act, 15 U.S.C.A. § 51. These statutory provisions seem to indicate authority on the part of the Government to carry on simultaneous proceedings under both acts. See Federal Trade Commission v. Cement Institute, 333 U.S. 683, at page 694, 68 S.Ct. 793, at page 800, 92 L.Ed. 1009: "We find nothing to justify a holding that the filing of a Sherman Act suit by the Attorney General requires the termination of these Federal Trade Commission proceedings."

The jurisdiction of this court in this case is derived directly from § 4 of the Sherman Act, supra, which not only confers jurisdiction, but imposes the duty to hear and determine the case. We find no authority holding that jurisdiction of this court depends on any presumption of continuance of the conspiracy, or that presumption of continuance of the conspiracy can be overcome by presumption that the defendants will fully comply with the cease and desist order. In other words, the net result is that the jurisdiction of this court is based solely upon a congressional mandate and not upon a balancing of presumptions.

True, the Government must establish by proof the jurisdictional allegations of the complaint, and every other material and essential fact, and at this stage of the proceedings it appears the complaint contains the necessary allegations to confer juris-

diction. Otherwise the defendants by mere charge of mootness, based on presumption, could require the court to try this case piecemeal, and compel production of proof of the continuance of the conspiracy before the Government was afforded opportunity to produce its proof of the formation and existence of the alleged conspiracy. See United States v. Sinclair Refining Co., 10 Cir., 126 F.2d 827, and the following from Walling v. Helmerich & Payne, 323 U.S. 37, at page 43, 65 S.Ct. 11, at page 14, 89 L.Ed. 29, where the Supreme Court said: "* * * Despite respondent's voluntary cessation of the challenged conduct, a controversy between the parties over the legality of the split-day plan still remains. Voluntary discontinuance of an alleged illegal activity does not operate to remove a case from the ambit of judicial power." Citing cases.

To put it another way, we might observe that the Federal Trade Commission proceeding adjudicated the conduct charged in its complaint constituted unfair methods of competition under § 5 of the Federal Trade Commission Act, while the object of this proceeding under the Sherman Act is to obtain an adjudication that the defendants' conduct constitutes a restraint of interstate trade and commerce, in violation of § 1 of the Sherman Act, 15 U.S.C.A. § 1.

Very briefly, the cease and desist order prohibits the respondents from concerted action among themselves, or with others, to use the multiple basing point system in the sale of cement, etc., while the relief sought in the case at bar is not only for an injunction against continued agreements among the defendants, but seeks a decree declaring that the quoting or selling of cement at prices calculated or determined pursuant to the multiple basing point system, constitutes a violation of the Sherman Act. It seeks the dissolution of the Cement Institute, and a prohibition against the organization of any other association with similar functions. In fact the Cement case, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1009, supra, makes frequent reference to the Cement Institute as being one of the prime movers in the conspiracy in the Federal Trade Commission case.

Much of the relief requested here has not been afforded to the Government in the cease and desist order, which does not in any way hold that the Sherman Act has been violated.

Next, the prayer for relief in the present case asks that the activities of the defendants be adjudged a violation of the Sherman Act, and will give rise to liabilities which are different from those imposed in the Federal Trade Commission proceeding. In fact an examination of the Commission's findings of fact and conclusions of law in the so-called Cement case, supra, 333 U.S. 683, at page 735, 68 S.Ct. 793, 92 L.Ed. 1009, set out in part in Mr. Justice Burton's dissent, shows that the defendants were found guilty of violation of the Clayton Act, the Robinson-Patman Act and the Federal Trade Commission Act, and not the Sherman Act.

■ It would seem the Federal Trade Commission Act was not designed to interfere with, or detract from the exercise of the authority and duty of the Attorney General to seek enforcement of the Sherman Act, as it especially provides that no order of the Commission, or judgment, shall in any wise relieve or absolve any person from liability under the anti-trust acts, which are defined as including the Sherman Act. See 15 U.S.C.A. § 44, and § 11 of the Trade Commission Act, 15 U.S.C.A. § 51.

■ We therefore conclude that the Attorney General was acting within his authority when he directed the filing of the complaint pending in this court.

The Federal Trade Commission has no jurisdiction over, and cannot afford relief from, Sherman Act violations. Only Federal Courts have that authority.

The motion to dismiss the complaint should be, and is, hereby denied.