**UNITED STATES of America**

v.

**CHAS. PFIZER & CO., Inc., et al.**

United States District Court
S. D. New York.

May 7, 1962.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, New York City, by Herman Gelfand, Asst. U. S. Atty., Anti Trust Div., for Government.

John F. Wood, New York City, for defendant Chas. Pfizer.

RYAN, Chief Judge.

■ All the defendants have moved to stay prosecution of this indictment until final determination by the Federal Trade Commission of a proceeding there pending against the three corporate defendants, and two other corporations who are not named as defendants.

The indictment filed on August 17, 1961 was returned against Charles Pfizer & Co. Inc., American Cyanamid Company and Bristol-Myers Company, and their respective chief executives: John E. McKeen, Wilbur G. Malcolm and Frederic N. Schwartz. Olin Mathieson Chemical Corporation and The Upjohn Company, who were alleged to be co-conspirators, were not named defendants. Defendants have pleaded not guilty.

The indictment by Count One charges that, since about November 1953 and continuing to the date of the filing of the indictment, all six defendants and the other two alleged co-conspirators have engaged in an unlawful combination and conspiracy in restraint of interstate trade and commerce in the manufacture, distribution and sale of broad spectrum antibiotic products in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1. Count Two charges that for the same period of time, the six defendants and alleged co-conspirators combined and conspired that the three defendant corporations might monopolize interstate trade and commerce in broad spectrum antibiotic products in violation of Section 2 of the Sherman Act. Count Three charges that the defendants have monopolized interstate trade and commerce in broad spectrum antibiotic products since at least November 1953 in violation of Section 2 of the Sherman Act.

The conspiracy, attempt to monopoly, and the monopoly alleged in the indictment found expression, it is charged, in an agreement by which the defendants and the alleged co-conspirators divided the manufacture and sale of antibiotics among themselves at identical and non-competitive prices, licensed one another and refused to license others under patents, and fraudulently procured for Pfizer an invalid patent; and otherwise eliminated competition among themselves; all with the effect of maintaining unreasonably high prices, avoiding the testing of the validity of the patent fraudulently issued and restricting and

preventing improvements and research in the field.

Three years before indictment and on July 28, 1958, the Federal Trade Commission had issued a complaint charging the three defendant companies and the two alleged co-conspirator-companies as respondents with violating Section 5 of the Federal Trade Commission Act (15 U.S.C.A. § 45). The complaint before the Commission charged the defendant Pfizer alone with unfair methods of competition in commerce and deceptive acts and practices in violation of the Act in that it attempted to monopolize the antibiotics industry and fraudulently obtained an invalid patent under which it issued licenses. The complaint also charged that all the respondents conspired to violate the Act by fixing prices, cross licensing one another, attempting to monopolize the industry, and by assisting Pfizer to fraudulently obtain an invalid patent under which they accepted licenses with knowledge of the patent's invalidity.

We note that the complaint before the Commission charges the five corporations with violations of the Federal Trade Commission Act committed up to July 28, 1958. The indictment charges but three of these corporations and three individuals with violation of the Sherman Act running from 1953 up to August 17, 1961 (a period of more than three years after the last violation charged before the Commission).

Hearings before the Commission were held from January, 1959 to February, 1960. The Hearing Examiner, on October 13, 1961, filed a decision exonerating the respondents and recommending dismissal of the complaint on the merits. This decision is presently before the Commission.

It is this determination—and apparently a possible subsequent judicial appeal in the event of the issuance of an adverse commission order—that the defendants would have the Government await before further prosecution of the indictment. It is urged that the ultimate decision of the Commission will affect many of the matters involved in the criminal action and it will settle and simplify many of the issues of fact common to both. The defendants contend that the interests of justice would best be served if the stay now sought were granted.

Aside from the difference in the parties and the time span, it appears from a reading of the complaint before the Commission and the record of the hearing that the facts underlying it and alleged in the indictment are similar and in many respects identical. The legal concepts and issues are quite different. The Federal Trade Commission is regulatory in nature; the Sherman Act is penal as well as civil; the consequences flowing from each Act are quite dissimilar. The proceedings themselves, the rules governing them and the legal principles applicable to each are distinct. The special provisions of each statute and the power of the Government to invoke both, simultaneously or successively, have been expressly recognized in one of the enactments (15 U.S.C.A. § 51) and by the Courts in Federal Trade Commission v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948); United States v. Cement Institute, D.Colo., 85 F.Supp. 344.

The fact that defendants may have been exonerated of violation of the Federal Trade Commission Act and the possibility that the determination may be affirmed by the full Commission's order, does not and would not estop the Government from proceeding against the defendants under the Sherman Act. This principle was emphatically and unequivocally reaffirmed by the Supreme Court in California v. F. P. C., 82 S.Ct. 901, on April 30, 1962, # 187, reversing, 111 U.S.App.D.C. 226, 296 F.2d 348, where, notwithstanding an express provision of Section 7 of the Clayton Act that the Act shall not apply "to transactions duly consummated pursuant to authority given by the * * * Federal Power Commission * * *," the Court vacated the Commission's order of approval holding that during the pend-

ency of a Government filed antitrust suit, the Commission should not have proceeded to a decision on the merits of the application but should have awaited the determination of the antitrust judicial litigation. How much more clearly does that principle of primary jurisdiction emerge here where the Federal Trade Commission Act provides expressly that no Federal Trade Commission order or judgment of the Court enforcing it shall "in anywise relieve or absolve any person from any liability under the antitrust Acts." (Sections 5(e) and 11, 15 U.S.C.A. §§ 45(e) and 51). Not only are the findings of the Commission not binding on the Government in this criminal proceeding but the findings would not be admissible on trial. The Administrative findings here are neither res judicata, nor do they constitute collateral estoppel. (United States v. R. C. A., 358 U.S. 334, 79 S.Ct. 457, 3 L.Ed.2d 354.)

Finally, whether an affirmance of the Commission's determination exonerating defendants of violation of the Federal Trade Commission Act would serve to sharpen or narrow the issues to be tried is a matter which rests within the discretion of the prosecutor when and if such order shall issue. It is just as likely that the order will have no effect on the prosecution. The indictment was returned after the Commission proceedings had been pending for three years, after access by the Department of Justice to all the records before that body, and shortly before the Commission's decision. In any event, there are violations charged for a further period, presumptively based on additional evidence not before the Commission.

There remains but the question of whether the interests of justice require that the Court exercise its inherent power to stay the prosecution. This depends on whether the concurrent prosecution of the administrative appeal and the indictment would work such hardship on defendants as to dictate relief. We hold no showing has been made justifying a stay beyond the extensions of time

granted for the making of motions addressed to the indictment.

The stay is denied and the defendants are to file all motions addressed to the indictment within 20 days from the date hereof.

So ordered.