### Petition of COLUMBIA BROADCAST-ING SYSTEM, INC.

United States District Court
S. D. New York.
Nov. 10, 1964.

Rosenman, Colin, Kaye, Petschek & Freund, New York City, for plaintiff.

William H. Orrick, Jr., Asst. Atty. Gen., Washington, D. C., for defendant.

EDELSTEIN, District Judge.

This petition, denied on July 27, 1964, (opinion to follow) was brought pursuant to § 5(b) of the Antitrust Civil Process Act, 76 Stat. 548, 551 (1962), 15 U.S.C. § 1314(b) (Supp. V, 1964)[1] to set aside, or in the alternative, to stay

1. "Within twenty days after the service of any such demand upon any person, or at any time before the return date specified in the demand, whichever period is shorter, such person may file, in the district court of the United States for the judicial district within which such person resides, is found, or transacts business, and serve upon such custodian a petition for an order of such court modifying or setting aside such demand. The time allowed for compliance with the demand in whole or in part as deemed proper and ordered by the court shall not run during the pendency of such petition in the court. Such petition shall specify each ground upon which the petitioner relies in seeking such relief, and may be based upon any failure of such demand to comply with the provisions of this Act, or upon any constitutional or other legal right or privilege of such person." 76 Stat. 551 (1962); 15 U.S.C. § 1314(b) (Supp. V, 1964).

compliance with a Civil Investigative Demand [2] (C.I.D.) served upon petitioner, Columbia Broadcasting System, Inc. (C.B.S.), by the Antitrust Division of the Department of Justice. The C.I.D. was issued in the course of an investigation to determine whether section 1 and section 2 of the Sherman Act had been violated by the alleged "pricing of phonograph record manufacturing services at unreasonably low levels in an attempt to monopolize the phonograph record manufacturing industry." Petitioner contended that the C.I.D. was unreasonable, unduly burdensome, and an abuse of power since it allegedly demanded information [3] that had been already supplied to the Federal Trade Commission, (F.T.C.), during the course of the Commission's overall investigation of trade practices within the record industry. That investigation resulted in

2. "Whenever the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice, has reason to believe that any person under investigation may be in possession, custody, or control of any documentary material relevant to a civil antitrust investigation, he may, prior to the institution of a civil or criminal proceeding thereon, issue in writing, and cause to be served upon such person, a civil investigative demand requiring such person to produce such material for examination." 76 Stat. 548 (1962); 15 U.S.C. § 1312(a) (Supp. V, 1964).

3. The demand required that the following items be produced:

1. Copies of the annual reports of the company for the calendar or fiscal years 1960 through 1963.

2. Copies of all accounting, administrative, financial and procedural manuals, handbooks and guides which have, since December 31, 1960, been used in any part of the company engaged in the manufacture of phonograph records or the sale of custom services.

3. Copies of all organization charts or descriptions and all job descriptions which state the names, positions or jobs of persons who have, since December 31, 1960, had executive or supervisory responsibilities with respect to determining the company's prices, price policies or sales policies for custom services.

4. Copies of all market studies prepared or received since December 31, 1960, which refer or relate in whole or in part to the manufacture of phonograph records or to custom services.

5. Copies of all financial and all budget reports or forecasts prepared or received since December 31, 1960, which in whole or in part show sales, costs or profits relating to the manufacture of phonograph records or to custom services, and copies of all documents referred to in such reports or forecasts.

6. Copies of all price lists prepared or received since December 31, 1960, which purport to show prices for custom services.

7. All documents prepared or received since December 31, 1960, by any person having executive or supervisory responsibilities with respect to determining the company's prices, price policies or sales policies for custom services, and all documents prepared or received by anyone since December 31, 1962, which refer or relate in whole or in part to any of the following:

(a) actual or proposed prices, price policies or sales policies for custom services;

(b) costs of the manufacture of phonograph records or of custom services;

(c) the amount of profit or loss resulting from the performance of custom services.

8. All documents prepared or received since December 31, 1960, which constitute or which refer or relate in whole or in part to communications concerning custom services between the company and any other person, firm or corporation engaged in the manufacture of phonograph records for the account of others.

9. Copies of all documents which show, in units or dollars, the volume of phonograph records manufactured by the company during 1961, during 1962, or during the first ten months of 1963, and copies of all documents which show, in units or dollars, the volume of custom services performed by the company during 1961, during 1962 or during the first ten months of 1963.

[In lieu of producing the documents demanded by this paragraph 9, the Columbia Broadcasting System, Inc. may, at its option, produce a statement signed by a responsible officer setting forth its total unit and dollar volume by type of phonograph record manufactured for its own account and, separately, for the account of others, during each of the years 1961 and 1962 and during the first ten months of 1963.]

the filing of a complaint against the petitioner by the F.T.C. in June 1962 which charged that C.B.S., *inter alia*, had monopolized or attempted to monopolize the phonograph record business. Trial on the charges ensued before the F.T.C. in January 1963 and lasted until August 1963. No findings of fact have been called to the attention of this court.

Petitioner is engaged in the manufacture and distribution of phonograph records. It is also one of a group of "custom pressers" who manufacture ("custom press") records for record manufacturers who do not own their own manufacturing facilities. Although the Civil Investigative Demand referred to the "pricing of phonograph record manufacturing services * * * in an attempt to monopolize the phonograph record manufacturing industry" the government conceded that the instant investigation is directed solely toward petitioner's "custom services" operation.

█ Specifically, petitioner's contentions were as follows: first, that the C.I.D. should be quashed pursuant to Rules 30(b) and 45(d) of the Federal Rules of Civil Procedure as incorporated by § 5(e) of the Antitrust Civil Process Act, 15 U.S.C. § 1314(e) (Supp. V, 1964).[4] This contention was found to be without merit. Section 5(e) by its terms is purely supplementary. The legislative history of the Act clearly indicates that § 5(b), 15 U.S.C. § 1314(b) (Supp. V, 1964), which authorizes the challenge of Civil Investigative Demands in the federal district courts is to be read in conjunction with § 3(c) (1), 15 U.S.C. § 1312(c) (1) (Supp. V, 1964), which in turn sets forth the standard for determining the validity of such demands.

"The bill provides that the demand may be tested in a district court for the district in which the person designated in the demand is situated by the filing in such court of a petition for an order of such court modifying or setting aside such demand [Section 5(b)]. The reasonableness of the demand would be determined upon the same test as the reasonableness of the requirements contained in a subpena duces tecum issued by a court of the United States in aid of a grand jury investigation of such alleged antitrust violations. [Section 3(c) (1)]." S.Rep.No.1090, 87th Cong., 1st Sess. 4–5 (1961); see H.R.Rep. No.1386, 87th Cong., 2d Sess. 4 (1962). U.S. Code Congressional and Administrative News, p. 2567.

█ Petitioner's second contention was that the demand violated the Federal Constitution's prohibition against unreasonable searches and seizures. This contention was found to be equally without merit. If a C.I.D. is reasonable when tested by the standards applicable to a subpena duces tecum it does not violate the Fourth Amendment. See Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 194–209, 66 S.Ct. 494, 90 L.Ed. 614 (1946) ("[t]he gist of the [Fourth Amendment] protection is * * * that the disclosure sought shall not be unreasonable." Id. at 208, 66 S.Ct. at 505.)

█ Petitioner's final contention was that the duplication of information complained of is prohibited by § 3(c) (1) of the Act, 15 U.S.C. § 1312(c) (1) (Supp. V, 1964)[5] because this duplication "would be held to be unreasonable if contained in a subpena duces tecum

---

4. "To the extent that such rules may have application and are not inconsistent with the provisions of this Act, the Federal Rules of Civil Procedure shall apply to any petition under this Act." 76 Stat. 551 (1962); 15 U.S.C. § 1314 (e) (Supp. V, 1964).

5. "No such demand shall—
    "(1) contain any requirement which would be held to be unreasonable if contained in a subpena duces tecum issued by a court of the United States in aid of a grand jury investigation of such alleged antitrust violation * * *." 76 Stat. 549 (1962); 15 U.S.C. § 1312(c) (1) (Supp. V, 1964).

issued by a court of the United States in aid of a grand jury investigation * * *." [6] The government argued, on the other hand, that conduct which violates § 5 of the Federal Trade Commission Act may also violate the Sherman Act and thus be the subject of a separate suit by the Justice Department. This was clearly correct. Proceedings under § 5 do not "in anywise relieve or absolve any person * * * from any liability under the Antitrust Acts." 15 U.S.C. § 45(e) (1958); see 15 U.S.C. § 51 (1958); F. T. C. v. Cement Institute, 333 U.S. 683, 694–695, 68 S.Ct. 793, 92 L.Ed. 1010 (1948); United States v. Cement Institute, 85 F.Supp. 344, 347 (D.Colo.1949); cf. United States v. Chas. Pfizer & Co., 205 F.Supp. 94 (S.D.N.Y. 1962).[7] The government then reasoned that the power to bring suit for Sherman Act violations *"a fortiori"* gave it the power to investigate to determine whether such an action should be brought.[8] Petitioner, however, did not deny the government's power to investigate; but denied the government's power to conduct *unreasonable* investigations.

■■ Thus the only question before this court was whether the Civil Investigative Demand contained any requirement "which would be held to be unreasonable if contained in a subpena duces tecum issued by a court of the United States in aid of a grand jury investigation of such alleged antitrust violation * * *." 15 U.S.C. § 1312(c)

(1) (Supp. V, 1964). Grand jury subpenas duces tecum have been upheld as reasonable if the documents required were: described with reasonable particularity, relevant to the investigation being conducted and the request covered a reasonable period of time. Oklahoma Press Publishing Co. v. Walling, supra; see e. g. Brown v. United States, 276 U. S. 134, 142–143, 48 S.Ct. 288, 72 L.Ed. 500 (1928); F. T. C. v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696 (1924); Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); In the Matter of Grand Jury Subpoena Duces Tecum, Addressed to Provision Salesmen and Distributors Union, Local 627, AFL–CIO, 203 F. Supp. 575 (S.D.N.Y.1961). It has been stated that where the requesting government agency already has in its possession copies of many of the documents, the subpena to that extent is unreasonable. Application of Linen Supply Co., 15 F.R.D. 115, 119 (S.D.N.Y.1953); cf. Petition of Gold Bond Stamp Co., 221 F. Supp. 391, 398 (D.Minn.1963), aff'd Gold Bond Stamp Co. v. United States, 325 F. 2d 1018 (8th Cir. 1964); In the Matter of Grand Jury Proceedings, 1959 Trade Cas. ¶69,590 (S.D.N.Y.1959); Jack Loeks Enterprises, Inc. v. W. S. Butterfield Theatres, Inc., 20 F.R.D. 303 (E.D. Mich.1957) (Civil anti-trust action). But cf. In re Motions to Quash Subpoenas Duces Tecum, 30 F.Supp. 527, 531 (S.D.Cal.1939) (much of material

6. Id.

7. Petitioner also argued that duplication by the Justice Department of a Federal Trade Commission investigation is proscribed by a "liaison" policy arranged between the two departments. There was no indication in petitioner's brief that this policy is anything but voluntary nor is there anything in the legislative history of the Antitrust Civil Process Act to indicate that Congress intended to supersede the terms of the Federal Trade Commission Act, 15 U.S.C. §§ 45(e), 51 (1958). See H.R.Rep. No. 1386, 87th Cong.2d Sess. (1962); S.Rep. No. 1090, 87th Cong. 1st Sess.. (1961).

8. Although the Justice Department also argued that the terms of the Federal

Trade Commission complaint precluded overlap between the two investigations, the Department introduced no affidavits to rebut petitioner's sworn statements that its custom pressing was in fact scrutinized by the Commission. There was no need to resolve this question, however, because even if the same conduct were the only subject of both investigations, the second investigation would not necessarily be prohibited. A C.I.D. issued pursuant to such a second investigation might not be reptitious or burdensome. It was the content of the C.I.D., not the investigation, which was the subject matter of this motion.

previously furnished to a different governmental agency); Application of Texas Co., 27 F.Supp. 847 (E.D.Ill.1939) (material relevant to continued illegal practices subsequent to prior prosecution). Petitioner, in effect, would have had this court treat possession by the F.T.C. as possession by the Antitrust Division of the Justice Department. Conceding *arguendo* the validity of that equation, petitioner failed, in fact, to show that a significant number of the items requested in the C.I.D. were furnished to the Federal Trade Commission. Careful examination of petitioner's affidavits revealed that of the nine items demanded in the C.I.D. only two had been completely supplied to the Commission.[9] Moreover, petitioner's reply to the demand for reports and other documents dealing with sales costs and profits [12] affirmed merely that the "bulk" of this data was supplied. In relation to another demand, petitioner's counsel was "unable to recall" whether the F.T.C. requested custom pressing price lists [13] but believed that these were obtained by the Commission indirectly through some of petitioner's customers. Petitioner's other allegations of duplication were equally tenuous.[10] Clearly the petitioner had not shown that the C.I.D. was unreasonable and therefore its petition to quash was denied.

■ Petitioner's alternative prayer to stay the Civil Investigative Demand until the disposition of the Federal Trade Commission proceeding was also denied. No purpose would have been served by awaiting the Commission's findings. Such findings are not binding on litigation brought under the Sherman Act. 15 U.S.C. §§ 45(e), 51 (1958); see United States v. Chas. Pfizer, supra, 205 F.Supp. at 96–97.

9. Items 1 and 4 of the demand, see note 3, supra.

12. Item 5 of the demand, see note 3 supra.

13. Item 6 of the demand, see note 3 supra.

10. As to C.I.D. item number:
  2. Explanations, testimony and exhibits were presented at the hearing on accounting, administrative and financial procedures, but petitioner did not affirm that the manuals, handbooks, or guides requested in the C.I.D. were furnished;
  3. Organization charts were supplied, but petitioner did not allege that job description lists (including the names of persons with executive or supervisory responsibilities in determining price and sales policies) were furnished;

7. Some testimony and documents concerning custom services pricing was given at the hearing but petitioner did not allege furnishing the extensive documentary material requested in the C.I.D.;
  8. None of these items was supplied to the Commission—petitioner argued that they were not relevant to the Justice Department's investigation;
  9. Petitioner affirmed that "substantially all" of the material concerning the volume of the custom services operation was supplied but petitioner did not allege that it furnished such information with respect to "volume of phonograph records manufactured" as requested in the Civil Investigative Demand.